CENTURY CEMENT MANUFACTURING COMPANY, INC., Plaintiff, v. HANNIBAL M. FIORE, Appellant, and NEW YORK CASUALTY COMPANY, Respondent, and JAMES LUCIANO, an Individual Trading under the Style and Name of UNITED CONTRACTORS CO., and Others, Defendants.

Third Department, July 1, 1942.

*Edward M. Acton*, for the appellant.

*Coakley & Higgins* [*Royal F. Shepard* of counsel], for the respondent.

*Salvatore J. Leombruno*, for the defendant Antonio P. Siraco.

*John J. Bennett, Jr., Attorney-General*, for the defendant The People of the State of New York.

SCHENCK, J.   This is an appeal from an order and judgment granting the motion of respondent, New York Casualty Company, for affirmative relief in its claim to a fund of $3,778.63 remaining in the hands of the State of New York unexpended and available for distribution upon a contract between the State of New York and the defendant Luciano.   The appellant is assignee of Luciano's rights and interest in the proceeds of the aforesaid contract.   The respondent is surety on two bonds executed by Luciano in connection with the contract, one covering completion thereof, the other covering payment to materialmen and laborers employed in performance of the contract.   The controversy herein arises from the conflicting claims of these two parties to the aforesaid fund held by the State.

The contract in question was let in August, 1939, being officially approved September 11, 1939.   It provided for the performance of certain construction work upon a State highway in Washington county.   It also contained certain standard provisions in printed form and made part thereof for termination of the contract by the State under certain circumstances.   The more pertinent parts of these provisions appearing on page 6 of the printed part of the contract are as follows:

" 10.   It is further mutually agreed that if at any time during the prosecution of the work the Commissioner of Highways shall determine that the work upon any contract for the construction or improvement of a State or county highway is not being performed according to the contract or for the best interests of the State, that said Commissioner of Highways may suspend or stop the work under contract while it is in progress, and that the Commissioner of Highways shall thereupon complete the work in such manner as will accord the contract, plans and specifications and be for the best interests of the State, or he may cancel the contract and readvertise and relet as provided in Section 40 of the Highway Law, being Chapter 63 of the Laws of 1936, and the amendments thereto, and any excess in the cost of completing the contract beyond the price for which it was originally awarded shall be charged to and paid by the Contractor failing to perform the work.

" The Contractor further agrees, pursuant to the provision of Section 40 of the Highway Law, that the State reserves the right

to suspend or cancel this contract as above provided, and to complete the work thereunder or readvertise and relet as the Commissioner of Highways may determine.

" Whenever the Commissioner of Highways determines to suspend or stop work under the contract, a written notice sent by mail to the Contractor at his address and to the surety company, or bond man, at their address, shall be sufficient notice of his action in the premises.

" 11. It is further mutually agreed that the State Department of Public Works, Division of Highways, may apply any moneys due or to become due under this contract to the completion of the work or to the payment of the second Contractor; and in case a contract let under such forfeiture is let at a figure in excess of the amount remaining unpaid on the contract so forfeited or cancelled free from all liens and other encumbrances, then the principal agrees to deposit, within ten days from the receipt of notice of such reletting, to the credit of the State Department of Public Works, Division of Highways, for the prosecution and completion of the work a sum of money which is equal to such excess. In case the State Department of Public Works, Division of Highways, decides to complete said work in any other manner than by contract, then the said principal agrees to deposit to the credit of the State Department of Public Works, Division of Highways, within ten days from the receipt of notice of the final completion of the work, the amount of any excess cost occasioned by such completion, over the amount remaining unpaid on the contract so forfeited or cancelled free from all liens and other encumbrances. It is further mutually agreed that if the Contractor fails to deposit such sum to the credit of the State Department of Public Works, Division of Highways, and the surety on the bond for the faithful performance of this contract pays or deposits the same, that the State Department of Public Works, Division of Highways, may subrogate to such surety all rights, claims and titles to any moneys remaining in the hands of the State Department of Public Works, Division of Highways, which are adjudged as belonging to the Contractor Principal."

In connection with the letting of the contract, furthermore, two bonds were required before Luciano's bid could be accepted. Both were executed by Luciano as principal, and respondent, as surety. Both ran to the People of the State of New York as obligee. One bond was conditioned upon the completion of the contract in accordance with its terms and in such manner as to hold the State of New York harmless for damages, costs and judgments in excess of the amount of the contract. This is termed

the " completion " bond. The other bond, likewise running to the People as obligee, is conditioned upon the prompt payment of " all moneys due to all persons supplying the contractor or a sub-contractor with labor and materials employed and used in carrying out the contract." This is known as the " labor and material " bond. Both bonds were dated August 21, 1939.

Subsequently, after the letting of the contract and after the execution of the bonds, the contractor Luciano made his assignment to the appellant Fiore in consideration of moneys advanced presumably for use in connection with the contract. This assignment was filed November 25, 1939. On the said advances, there is a balance remaining in the sum of $3,950. Upon the basis of this assignment, appellant now claims the funds held by the State.

Following the assignment to Fiore, Luciano proceeded with the contract to partial completion. He was unable to complete it, however, and finally defaulted, as a result of which the State terminated the contract pursuant to the provisions thereof quoted above. At the time of the default Luciano had earned $4,925.71 on the contract on an estimate basis which had not been paid to him. The State elected to complete the contract itself at a cost of $1,147.08. This amount was deducted from the balance owing to Luciano, leaving a net balance on hand of $3,778.63, this amount being the subject of the controversy.

While the contract was completed by the State from the point of default at the foregoing comparatively small cost, that amount did not anywhere nearly approximate the total additional cost necessarily incurred in the final termination of the project. At the time of default, there were numerous claims for materials and labor, wages and costs outstanding. Some apparently were reduced to mechanics' liens. Others were not, but all seemed to be justified. At least they do not appear to have been controverted upon their respective merits in the present litigation. Because of these claims against the defaulting contractor, the respondent surety company herein paid out an aggregate of approximately $20,000 under the labor and material bond. Upon the basis of these payments, made pursuant to a bond conditioned upon Luciano's payment of the items involved and upon which he had defaulted, respondent now claims right by subrogation to the funds in the possession of the State.

The order and judgment in favor of the respondent surety company should be affirmed. The assignee of the contractor succeeded to the latter's rights but there is no basis for a contention that he acquired rights superior to those of the assignor. The contractor defaulted upon the contract. His assignee cannot now recover the

fund in question where the surety company has been compelled to expend several times the amount of the fund in paying materialmen and laborers pursuant to the provisions of the labor and material bond. The surety company obligated itself to pay all laborers and materialmen pursuant to the conditions of the bond. That some of the claims had been reduced to liens while others had not is immaterial as far as obligation on the bond is concerned. If the bonding company had not paid the claims, the State would have been justified in using the disputed fund for this purpose, just as it used other moneys owing to the contractor Luciano to complete the work. That the State elected to proceed in this manner is the only reason respondent did not become liable on the completion bond as well as on the labor and material bond.

The respondent is clearly subrogated to the rights of the State under the conditions of the bond. Payments of nearly $20,000 having been made pursuant thereto, respondent is now entitled to enforce its subrogation rights against the money in the possession of the State, exactly as the State would have been entitled to use this money as offset if it had paid the laborers and materialmen itself.

*Martin* v. *National Surety Co.* (300 U. S. 588, opinion by Mr. Justice CARDOZO) is directly in point and holds that a creditor holding a power of attorney as security for a loan to a contractor is subordinate to materialmen as respects rights to proceeds of the contract in the hands of the United States. It was there held that failure to pay materialmen was a default upon the contract of such nature as to compel the turning over of proceeds of the contract to the surety who guaranteed payment of materialmen. The same holds true in the instant case. The execution of the bonds and the contract constituted in effect one single operation. Without the bonds, assignee, analogous to the creditor in the *Martin* case, is bound by the obligations to which a contractor has committed himself in obtaining the contract. Those obligations include payment to materialmen and laborers. In case of default the proceeds of the contract are impressed with the equities favoring the laborers and materialmen or, as in the instant case, the surety who was compelled to pay them upon default by the principal. To say that the surety is not bound to pay such claims would nullify the language on the face of the bond, and would further render a nullity the provisions of law requiring such bonds.

*Scarsdale National Bank & Trust Co.* v. *U. S. Fidelity & Guaranty Co.* (264 N. Y. 159) involves what is in effect the precise question presented here. It was there held (opinion by CRANE, J.) that a surety company which had completed a contract following default

by the contractor was entitled to the proceeds which otherwise would be payable to the contractor, even though the latter had assigned all his rights and interests to a third party who had advanced him money for use on the contract. The fact that the " completion " bond was involved in the *Scarsdale* case and the " material and labor " bond in the instant case is immaterial. As was stated in the *Scarsdale* case (at p. 164): " To all rights under this contract the bonding company was subrogated. The equity in favor of the surety company *arose* at the time of the giving of its bond. The right *became available* when the surety company completed the work at a loss." In the instant case, of course, the surety company did not literally " complete " the construction work itself, but it did make the payments necessary to the complete termination of the contract, including liquidation of all obligations.

The rule that the surety company's equitable lien arose at the time of the execution of the bond and is accordingly superior to a subsequent assignment is established by ample authority. The principle is enunciated in *Prairie State Bank* v. *United States* (164 U. S. 227). It is supported by a line of Federal court decisions, including *Maryland Casualty Co.* v. *Board of Water Comrs.* (66 F. [2d] 730); *Lacy* v. *Maryland Casualty Co.* (32 id. 48); *Henningsen* v. *U. S. Fidelity & Guaranty Co.* (208 U. S. 404); *Hardaway* v. *National Surety Co.* (211 id. 552), all cited as authority in the *Scarsdale* case.

For these reasons the order and judgment should be affirmed, with costs.

CRAPSER and HEFFERNAN, JJ., concur; HILL, P. J., dissents in an opinion, in which BLISS, J., concurs.

HILL, P. J. (dissenting). Respondent, surety in a " labor and material " bond for the defendant Luciano, in connection with his contract with the State of New York to construct a highway in Washington county, has taken summary judgment as permitted by an order of the Albany Special Term directing the Comptroller to pay over $3,778.63 with accrued interest to reimburse in part the surety for amounts paid to sixteen lienors who furnished labor and material used in the construction of the highway. The claim is that under the " labor and material " bond the surety takes priority over the assignment to appellant Hannibal M. Fiore, who loaned money to the contractor which was applied to the payment of subcontractors, surveyors, laborers and materialmen in connection with the contract. His assignment complies with the Lien Law, and particularly with subdivisions 1 and 5 of section 25, and was filed as required by section 16. The surety bond was dated August

21 and the contract was approved by the State on September 11, 1939. The lien first filed to which the surety company claims to be subrogated was filed on November 27, 1939, in favor of the Albany Steel & Iron Supply Co., Inc. Prior to that time and on November 25, 1939, appellant Fiore had filed his assignment dated November tenth, and had advanced $7,500 thereunder; $3,950 remained unpaid when the State took over the contract on May 23, 1940. Respondent's other assigned liens were filed between December 14, 1939, and February 1, 1940.

We are here concerned only with the labor and material bond which required Luciano to pay laborers and materialmen, he agreeing with respondent that he would " indemnify and save the surety harmless from and against " all liability and would " place the surety in funds to meet the same before it should be required to make payment." The State assumed no obligation to pay the laborers and materialmen. The requirement for this type of bond indicated the State's governmental concern that those dealing with its contractors should not suffer loss. (*McClare* v. *Mass. Bonding & Ins. Co.*, 266 N. Y. 371.) Respondent paid nothing under the " completion " bond, as the State completed the work, paying therefor from the credit balance belonging to Luciano, and after that deduction there remained the fund here involved. The completion bond ran to the State, and the surety therein undertook to protect the State from all loss occasioned by the failure of the principal to complete the work.

Appellant's assignment is drawn (§ 25) and filed (§ 16) in compliance with the Lien Law. He is entitled to such priorities as are given him by the statute.

" Except as provided in section five [not here applicable] an assignee of moneys, or any part thereof, due or to become due under a contract for public improvement, whose assignment is duly filed prior to the filing of a notice of lien or assignment of every other party to the action, shall have priority over those parties to the extent of advances made upon such assignment before the filing of the notice of lien or assignment next subsequent to his assignment * * *." (§ 25, subd. 1.)

Appellant advanced the $3,950 claimed by it " prior to the filing of a notice of lien " by any of respondent's assignors, and unless the plain import of this statutory regulation has been changed by court decisions, he is entitled to priority over the respondent as assignee of those who filed liens subsequent to the filing of the assignment. *Arrow Iron Works, Inc.*, v. *Greene* (260 N. Y. 330) is an authority directly in point, as will appear from the excerpts quoted from the opinion (pp. 339, 340):

" For this sum there are two sets of claimants, (1) the defendant Bank of Yorktown, claiming under a written assignment from the contractor of all moneys due or to grow due under the contract, and (2) the eight defendant lienors whose claims have been allowed. The instrument of assignment, under which the Bank of Yorktown now claims, was executed by the contractor, Harry B. Greene, and delivered to the bank on May 16, 1929. At this time Greene was indebted to the Yorktown Bank for a balance of moneys previously advanced to him * * * and this was the sum repayment of which the assignment was designed to secure. Concededly, this assignment was filed in the appropriate offices. * * * Concededly, it was after this date that the eight defendant lienors * * * filed their claims. It will be seen that either the claim of the Yorktown Bank on the one hand, or the aggregate claims of the lienors on the other, will exhaust the fund * * * remaining payable. Notwithstanding the fact that the assignment to the bank was first filed, it has been held that the defendant lienors, whose notices of lien were subsequently filed, are entitled to priority and must receive the contract moneys remaining unpaid.

" The preponderance of authority, to the effect that an assignee of the moneys due or to become due under a contract for a public improvement, has priority over all lienors whose liens are subsequently filed, is overwhelming. (*Lauer* v. *Dunn*, 115 N. Y. 405; *McCorkle* v. *Herrman*, 117 N. Y. 297; *Stevens* v. *Ogden*, 130 N. Y. 182; *Beardsley* v. *Cook*, 143 N. Y. 143; *Bates* v. *Salt Springs Nat. Bank*, 157 N. Y. 322; *Hackett* v. *Campbell*, 10 App. Div. 523; 159 N. Y. 537; *Hall* v. *City of New York*, 79 App. Div. 102; 176 N. Y. 293; *Riverside Contracting Co.* v. *City of New York*, 218 N. Y. 596; *Anderson* v. *Hayes Construction Co.*, 243 N. Y. 140.)"

The same opinion distinguishes and explains *Laski* v. *State of New York* (126 Misc. 360; 217 App. Div. 420; 246 N. Y. 569), and terminates the explanation and distinguishing discussion with this sentence, " These may have been the considerations which induced our affirmance of the decision; certainly it was not the proposition that generally subsequent lienors should have priority over assignees " (p. 343). It is a novel doctrine that a subsequent lienor whose claim is junior to a prior assignee gains priority by assignment to a surety company, particularly in view of the latter's relation to the parties under the labor and material bond.

*Scarsdale National Bank & Trust Co.* v. *U. S. Fidelity & Guaranty Co.* (264 N. Y. 159) is the authority upon which the respondent relies and which was persuasive in the court below. That case is not an authority under the facts here presented. The last sentence of the opinion (p. 164) reads: " We held nothing to the contrary

in *Arrow Iron Works, Inc.*, v. *Greene* (260 N. Y. 330) and *Laski* v. *State* (217 App. Div. 420; affd., 246 N. Y. 569)." The following are some of the distinguishing features between the instant case and the *Scarsdale* case. Here it is unquestioned that the money was loaned directly to the contractor Luciano and used in building the road. There the contractor was "Cook Contracting Company." The money was loaned to "George T. Cook & Sons" upon notes indorsed by Cook Contracting Company and Anna B. Cook. The assignment to the bank was executed by "Cook Contracting Company." There was no clear-cut finding that the moneys borrowed were used in the prosecution of the work. Here there was no default under respondent's completion bond. The State completed the work out of moneys which it held and thereafter there remained the sum involved in this suit. There the default was in the completion contract, and the surety suffered a loss of more than $50,000 in completing the contract. (146 Misc. 819.) The distinction between the position of a surety company under a "completion" bond and under a "labor and material" bond is plain. Under the former, it is epitomized in the *Scarsdale* opinion in the Court of Appeals (p. 163): "The bonding company succeeded to all these rights of the State, under the principle of subrogation. Having completed the work in behalf of the State, it was subrogated to all the rights of the State as against the contractor. This was not a right given to it by the judgment of the court, or arising at the time of the default. It was implicit in its undertaking and agreement with the State." This default gave rise to no liability on behalf of the State. It was not holden to and did not pay these lienors. The surety company had been paid its premium for assuming the statutory liability that arose only when there was default by the contractor and debtor in paying and discharging its obligations.

The fund here involved, $3,778.63, remained after the State had completed the work upon which Luciano defaulted. Fiore having an assignment senior in point of time to all other liens, was entitled thereto unless by assignment to the surety company, the junior lienors are promoted to a superior position.

A contractor's default in his obligation under a labor and material bond gives rise to a different jural relation as to the funds in possession of the State than when there is a default in connection with a completion bond, under which the State, having suffered financial damage, compensated and paid by the surety, the latter is subrogated to the State's claim and its rights are prior to liens or assignments filed after the filing of the bond, the reason as given in the opinion in the Court of Appeals in the *Scarsdale* case being, "The equity in favor of the surety company *arose* at the time of

the giving of its bond. The right *became available* when the surety company completed the work at a loss. \* \* \* The equitable lien arose at the time of the execution of the bond and was thus superior to the assignment." Under a labor and material bond, no obligations from which equities could arise existed at the time of the giving of the bond, and under the Lien Law (§ 25, subd. 1) an assignee has priority as to advances made before the filing of a notice of lien. This rule is recognized in the *Arrow* case (*supra*). The doctrine of that case is not questioned but restated in the *Scarsdale* case (*supra*).

The order and judgment should be reversed and the cross-motion by the appellant Fiore for summary judgment should be granted.

BLISS, J., concurs.

Order and judgment affirmed, with costs.