STATE BANK OF ALBANY, Respondent, v. DAN-BAR CONTRACTING Co., INC., et al., Defendants, and MARYLAND CASUALTY COMPANY, Appellant. (Action No. 1.)

MARYLAND CASUALTY COMPANY, as Assignee of F. J. CROISSANT, Appellant, v. ALLIED CHEMICAL AND DYE CORPORATION (BARRETT DIVISION) et al., Defendants, and STATE BANK OF ALBANY, Respondent. (Action No. 2.)

STATE BANK OF ALBANY, Respondent, v. DAN-BAR CONTRACTING Co., INC., et al., Defendants, and MARYLAND CASUALTY COMPANY, Appellant. (Action No. 3.)

F. J. CROISSANT, Respondent, v. DAN-BAR CONTRACTING Co., INC., et al., Defendants, and MARYLAND CASUALTY COMPANY, Appellant. (Action No. 4.)

Third Department, March 28, 1961.

*De Graff, Foy, Conway & Holt-Harris* (*William F. Conway* and *Thomas F. Conneally, Jr.,* of counsel), for Maryland Casualty Company, appellant.

*Whalen, McNamee, Creble & Nichols* (*Charles E. Nichols* of counsel), for State Bank of Albany, respondent.

*Louis J. Lefkowitz, Attorney-General,* for the People.

*Per Curiam.* In these four actions the appellant Maryland Casualty Company and the respondent, the State Bank of Albany, hereinafter referred to as '' Maryland '' and '' Bank '', claimed priority to funds withheld by the State of New York, in connection with four public improvement contracts. Decisions in Supreme Court, Albany County, have awarded the funds to the '' Bank ''. '' Maryland '' claims these withheld funds as subrogee; '' Bank '' as assignee.

The facts are not disputed. Dan-Bar Contracting Company, Inc., hereinafter referred to as '' Contractor '' entered into four separate public improvement contracts with the State of New York. In each instance '' Maryland '' executed as surety a performance bond required by section 38 of the Highway Law and a labor and material bond prescribed by section 137 of the State Finance Law. The Contractor subsequently executed assignments of moneys due or to become due from its contracts to the Bank, said assignments being made in full compliance with section 16 of the Lien Law and all advances under said assignments were made by the Bank prior to the filings of any liens. In connection with each, Contractor performed its contractual obligations as to construction, but failed to pay certain materialmen. Except in one instance which raises a separate problem Maryland subsequent to the completion and acceptance of the work by the State, paid certain materialmen who had filed liens receiving assignments of the lienors rights. There seems to be no dispute that Maryland's payments were made pursuant to its material bond and not its performance bond.

Maryland claims a pre-emptive right to reimbursement for its losses by virtue of its supposed right as subrogee of the State of New York; that as of the date of the execution of its bonds, it acquired an equitable lien against these moneys. Bank relies upon its assignment under section 16 of the Lien Law and its priority under section 25 of the Lien Law. Fur-

ther that the doctrine of subrogation is inapplicable inasmuch as there are no rights to which Maryland can be subrogated, since Maryland's obligee, the State, had no right by contract or statute to pay materialmen out of the retained funds. The trial court held with the Bank in each case. We agree. The equitable doctrine of subrogation cannot give a surety any greater rights than those possessed by the obligee, and its right depends entirely upon the rights of its obligee. Similarly the assignee's rights depend upon those of the assignor. As stated above the obligee, the State of New York, neither by any of these contracts nor by statute was required to pay materialmen the obligations due them from the Contractor nor to insist on payment or to require evidence of payment before making payments to the Contractor. When Maryland paid these materialmen under its labor and material bond as surety it was not discharging any obligation of the State which would give rise to any right of subrogation to the withheld funds. The State had no right to these balances, it was merely a stakeholder. An entirely different situation would exist if the contracts between the Contractor and the State provided that in the event the Contractor failed to pay all bills for labor and material furnished in the performance of the contract the State would have the right to withhold out of payments due to the Contractor such sums as would be necessary to insure satisfaction of all unpaid bills (cf. *United States Fid. & Guar. Co.* v. *Triborough Bridge Auth.,* 297 N. Y. 31).

Cases which have determined the surety's rights to be superior have turned upon the express contractual right of the obligee to resort to the withheld funds for one purpose or another; for payment of unsatisfied subcontractors (*United States Fid. & Guar. Co.* v. *Triborough Bridge Auth., supra*; *Ætna Cas. & Sur. Co.* v. *United States,* 4 N Y 2d 639; *Fidelity & Deposit Co. of Maryland* v. *New York City Housing Auth.,* 241 F. 2d 142; *Municipal Housing Auth.* v. *Hatfield Elec. Corp.,* 264 App. Div. 99; *Hedley* v. *New Amsterdam Cas. Co.,* 267 App. Div. 800, affd. 293 N. Y. 921); for completion in case of default (*Scarsdale Nat. Bank & Trust Co.* v. *United States Fid. & Guar. Co.,* 264 N. Y. 159; *First Nat. Bank in Yonkers* v. *City of New York,* 177 F. Supp. 175).

In *Century Cement Mfg. Co.* v. *Fiore* (264 App. Div. 475) there was a *default* and a *termination* of the contract. A performance bond, and a labor and material bond were involved. The surety did not suffer a loss on its performance bond but paid out $20,000 on its payment bond. By a 3–2 decision the surety was awarded the withheld funds over the assignee, the

Oneida National Bank. Apparently the majority extended the normal meaning of " default " to include the nonpayment of materialmen. If so they were in error. If a failure to pay materialmen is, absent an express contractual provision, a " default " giving the State a right to apply withheld funds for their benefit, an anomaly follows since an unpaid lienor in every case will be substituted ahead of an assignee in derogation of subdivision (1) of section 25 of the Lien Law. This is clearly not so (cf. *Arrow Iron Works* v. *Greene,* 260 N. Y. 330; *Lee* v. *Bailey Corp.,* 267 N. Y. 161).

In summary the Contractor performed its contracts and the State accepted them. There was no contractual right of the State to withhold funds for unpaid contractors and therefore, the Contractor had an unqualified right to the funds and so did its assignee the Bank. A contrary decision would be a perversion of the Lien Law for in effect, the assignee would be losing its priority by virtue of an equitable doctrine patently inapplicable on the facts.

In view of the results reached, it is not necessary to consider the subsidiary questions raised.

The judgment should be affirmed in each action, without costs.

Bergan, P. J., Coon, Gibson, Herlihy and Reynolds, JJ., concur.

Judgment affirmed in each action, without costs.