SPANOS PAINTING CONTRACTORS, INC., Plaintiff-Appellant,

v.

UNION BUILDING & CONSTRUCTION CORP., Defendant-Appellee,

and

Cunningham, Nielsen & Molloy, Inc., Fidelity & Deposit Company of Maryland, The People of the State of New York, New York State Thruway Authority, Department of Public Works of the State of New York, Reinforced Steel Contracting Corp., Chisholm Contracting Company, Syro Steel Company, Ernst Steel Corporation, Gulf Oil Corporation, Defendants.

No. 425, Docket 28705.

United States Court of Appeals
Second Circuit.

Argued May 27, 1964.

Decided July 20, 1964.

Evan A. Chriss, Baltimore, Md. (Harry Giesow, Gainsburg, Gottlieb, Levitan & Cole, New York City, on the brief), for plaintiff-appellant.

William J. Murphy, Albany, N. Y. (McClung, Peters & Simon, Albany, N. Y., on the brief), for defendant-appellee.

Before LUMBARD, Chief Judge, and WATERMAN and HAYS, Circuit Judges.

LUMBARD, Chief Judge.

This appeal, brought in a diversity action by Spanos Painting Contractors,

Inc., from a judgment of the United States District Court for the Southern District of New York which dismissed its complaint after a trial without a jury, raises four claims: (1) that there was insufficient evidence to support Judge Bonsal's finding of fact that Spanos' attorney had authority to execute two releases to the appellee, Union Building & Construction Corp.; (2) that the releases contravened the public policy underlying § 137 of the New York State Finance Law, McKinney's Consol.Laws, c. 56, and therefore they are null and void; (3) that the district judge erred in refusing to grant rescission of the releases on grounds of mistake and lack of consideration; and (4) that the district judge erred in permitting modification of the pre-trial order. Finding these claims to be without substance, we affirm the judgment of the district court.

The basic facts are undisputed. Union, a New York corporation, entered into a contract in 1957 with the New York State Public Works Department to improve the Berkshire Spur of the New York Thruway. Union subcontracted highway guardrail work to Cunningham, Nielsen & Molloy, Inc., which in turn in May 1959 subcontracted the painting of this rail to Spanos, a Maryland corporation. Under its contract with the State, Union, with its surety, filed a labor and material bond under § 137 of the New York State Finance Law.

Following Cunningham's failure to pay Spanos, Spanos retained Nicholas Tsoucalas, a New York attorney, to represent it in negotiating a settlement of its claim. In November 1959 he filed a mechanic's lien with the state comptroller against the monies due Cunningham under the Berkshire Spur contract and shortly thereafter instituted suit in the Southern District against Cunningham which resulted in a judgment in favor of Spanos in January 1960. Meanwhile, Syro Steel Co., another supplier to Cunningham under the same contract with Union, also filed a mechanic's lien and brought suit.

On March 31, 1960, Syro and another of Cunningham's creditors, Browne & Bryan Lumber Co., represented by their counsel, met with representatives of Union and Cunningham and agreed that in return for general releases from all of Cunningham's creditors, including Spanos, Union would pay out $50,000, the remainder of its debt to Cunningham under the contract. As part of this arrangement, the parties further agreed that Syro would receive the $50,000 and that Spanos and Browne & Bryan would share certain of Cunningham's accounts receivable and a portion of the proceeds of a proposed sale of its equipment.

Tsoucalas was not present at these negotiations but was consulted by telephone and agreed to this disposition. After conferring with the president of Spanos, he executed a general release of Union and its surety and a release of Spanos' rights under its mechanic's lien. Negotiations during July resulted in a second agreement between Cunningham and its creditors involving further assignments of its accounts receivable. When Spanos failed to receive the monies due it under these agreements, Tsoucalas, on December 5, 1960, filed, on Spanos' behalf, a second mechanic's lien with the state comptroller which in this action Spanos seeks to foreclose.

Tsoucalas testified that he had been authorized and intended to execute to Union solely a release of $50,000, inasmuch as he had been advised that Union owed Cunningham further sums under the contract and that these sums would be available to satisfy Cunningham's obligations to Spanos. The president of Spanos—the sole individual who might have substantiated Tsoucalas' story—was present in the courtroom during the trial but failed to testify on Spanos' behalf. Despite Tsoucalas' denials, we find ample evidence to support Judge Bonsal's finding of fact that Tsoucalas was authorized to execute a general release as well as a release of the mechanic's lien.

Both releases were short and clear on their face and followed the common printed form for such documents readily available from legal stationers. The general release bore the words "General Release" at its head. Moreover, Tsoucalas conceded that Union's surety had sent him photostatic copies of the releases, although until August 1960 he took no action to rectify the error which he claims had been committed.

Furthermore, the record clearly establishes that Tsoucalas exercised virtually complete authority in the task of collecting Cunningham's debt to Spanos. In need of prompt payment to stave off its own possible bankruptcy, Spanos fully acquiesced in Tsoucalas' activities. In pursuit of his task Tsoucalas had commenced an action and secured a judgment against Cunningham, had filed the proper mechanic's liens, had arranged for the assignment of Cunningham's accounts receivable, and had agreed on behalf of Spanos to forbear from taking any legal action which might throw Cunningham into bankruptcy. Tsoucalas assumed so much responsibility in these matters that the parties naturally turned to him in negotiating the settlement of their accounts.

In view of Tsoucalas' exercise of such broad responsibility, the failure of Spanos' president to substantiate Tsoucalas' testimony, and the reasonableness of executing the two releases so as to facilitate the distribution of funds to all of Cunningham's creditors, Judge Bonsal was not obliged to credit Tsoucalas' testimony that he was authorized to execute only a limited release. Judge Bonsal was fully justified in concluding that Tsoucalas was authorized to execute both a general release and a release of Spanos' mechanic's lien.

■■ Spanos further contends that the releases contravened the public policy underlying § 137 of the New York State Finance Law and that they consequently are null and void. We find no merit in this position. Section 137 nowhere states that a waiver of the rights conferred by it is to be deemed null and void.[1] Nor is there any basis in law or reason to presume that the New York legislature did not want to permit contractors to effect whatever arrangements would best suit the particular circumstances of any given situation. Carroll McCreary Co., Inc. v. People, 267 N.Y. 37, 195 N.E. 675 (1935). Furthermore, a lienholder's rights under § 137 are not analogous, as Spanos suggests, to the rights of a laborer under the Fair Labor Standards Act. To permit a laborer to waive his rights under the act would undermine the very purpose of fair labor legislation. Brooklyn Savings Bank v. O'Neil, 324 U.S. 697, 65 S.Ct. 895, 89 L.Ed. 1296 (1945). The primary purpose of § 137, on the other hand, is to provide subcontractors a remedy by which they may recover sums due them where they would have failed under the old, more stringent lien law. State Bank of Albany v. Dan-Bar Contracting Co., Inc., 23 Misc.2d 487, 491, 199 N.Y.S.2d 309, 313 (1960), aff'd, 12 A.D.2d 416, 212 N.Y.S.2d 386, appeal denied, 14 A.D.2d 458, 218 N.Y.S.2d 587 (3d Dep't 1961), aff'd, 12 N.Y.2d 804, 235 N.Y.S.2d 835, 187 N.E.2d 19 (1962). Having asserted its rights by obtaining a mechanic's lien, and then having released them, Spanos has had the full protection of the law.

■ Spanos next maintains that the district judge erred in refusing to grant

1. Section 137 in its relevant part reads that:
"* * * [i]f, in an action to enforce a mechanic's lien pursuant to the provisions of the lien law the court shall find that the laborer or materialman has a valid lien but that such lien cannot be satisfied because the moneys if any due * * * to the subcontractor are insufficient therefor, the laborer or materialman may nevertheless, if he is a beneficiary of a bond required by the comptroller, bring action to recover the amount of such lien from the obligors of the bond."

**460**

its prayer for rescission of the releases. Under New York law Spanos is entitled to rescission only if it can establish, first, that Tsoucalas mistakenly executed the releases and, second, that the releases were given gratuitously without consideration. Buffalo Electric Co., Inc. v. New York, 9 A.D.2d 372, 194 N.Y.S.2d 72 (4 Dep't 1959); Wheeler v. New York, 286 A.D. 310, 143 N.Y.S.2d 83 (3d Dep't 1955).

■ Assuming *arguendo* that Tsoucalas had mistakenly executed the releases, we find, nonetheless, that Spanos received ample consideration for them. Accordingly rescission must be denied. As part of the settlement arrangements, Union released some $50,000 to Cunningham. This payment, however, was not merely in satisfaction of a pre-existing obligation, since the amount due from Union to Cunningham was in dispute because of certain back charges claimed by Union. By settling this dispute and releasing the monies it owed Cunningham, Union made available a specific fund out of which Spanos and the other creditors could receive their respective shares. This constituted sufficient consideration for Spanos' releases. Carroll McCreary Co., Inc. v. People, supra.

■ Finally Spanos contends that the district judge erred in permitting modification of the pre-trial order. Union had inadvertently conceded in the pre-trial proceedings that it still owed Cunningham a sum of money. Inasmuch as this was not in fact the case, as clearly appears from the record, Judge Bonsal properly accorded Union the opportunity to prove the contrary, in order "to prevent manifest injustice," as provided for in Rule 16 of the Federal Rules of Civil Procedure.

The judgment of the district court is affirmed.