JOSEPH SLATTERY and Others, Respondents, *v.* NATIONAL COM-MERCIAL BANK AND TRUST COMPANY and Others, Respondents, Impleaded with STATE OF NEW YORK and FIDELITY AND DEPOSIT COMPANY OF MARYLAND, Appellants.

(Consolidated Action.)

Third Department, March 20, 1936.

*John J. Bennett, Jr., Attorney-General,* for the appellant State of New York.

*Rosendale, Dugan & Haines* [*P. C. Dugan* of counsel], for the appellant Fidelity and Deposit Company of Maryland.

*George M. Simon,* for the plaintiffs-respondents.

*Harold J. Hughes,* for the defendants-respondents Earl Bush and others.

*Joseph F. O'Rourke,* for the defendants-respondents, Louis Carmelio and others.

*Wiswall, Walton, Wood & MacAffer,* for the defendant John Roshirt, Inc.

*Reuss & LeFevre,* for the defendant Edward V. Carey Contracting Corporation.

*Cregg, Rulison & Brazell,* for the defendant J. B. McCabe.

*Aaron & Dautch,* for the defendant Keystone Portland Cement Co.

*Illch & Poskanzer* [*Robert C. Poskanzer* of counsel], for the respondent National Commercial Bank and Trust Company.

*Andros, Wood, Stutz & Rider,* for the defendant American Casting Company.

*Homer E. Peters,* for the defendants Berkshire Gravel Company and Pittsfield Welding Company.

MCNAMEE, J.   The State contracted with Edward V. Carey Contracting Corporation on November 17, 1932, for the construction of a public highway for the sum of $141,189.02.   The defendant surety company executed and delivered its bond to the State in the sum of $62,698 to insure the performance of the contract by the contractor.   When about half of the work was completed and paid for by the State, the contractor defaulted, and the State relet

the contract to a second contractor at an excess cost to the State of $24,003.75. At the time of the default the State Comptroller had in his hands applicable to the contract the sum of $7,761.50, the percentage retained by the State to insure performance, and also the further sum of $3,522.49, representing work which had been done but not certified, making a total sum unpaid of $11,283.99. At the time of the default no money was due or payable to the contractor.

The defendant National Commercial Bank and Trust Company held an assignment of moneys in the hands of the State Comptroller due and to grow due to the contractor to the extent of $5,820.34. This money had been advanced by the bank and used in the prosecution of the work. The assignment was valid, and was filed before the filing of any liens, and prior to the default. A number of liens for labor and materials were subsequently filed. These, with the assignment, aggregated $12,155.20. The judgment directed payment first to the bank of the amount of its assignment, from the moneys in the hands of the State Comptroller, and directed that the balance of such moneys be applied to the payment of the liens.

It is the contention of the State and of the surety company that there was no fund which the assignment could transfer, or to which the liens could attach; and, therefore, the fund was free from incumbrance. Also, they contend that the fund was applicable first to the payment of the excess cost of completing the work; and that both the State and the surety company were contractually interested in having the fund so applied.

The bank and the lienors contend that the State has only an academic interest in the fund; that the whole thereof, whether " retained percentage " or " earned money," should be applied for the benefit of the assignee and lienors; and that the surety company has no right to be heard in reference thereto.

Paragraph XI of the original contract provides that the State " may apply any moneys due or to become due under this contract to the completion of the work or to the payment of the second Contractor; and in case a contract let under such forfeiture is let at a figure in excess of the amount remaining unpaid on the contract so forfeited or cancelled free from all liens and other incumbrances," then the contractor agrees to deposit after completion of the work, " a sum of money which is equal to such excess." And it is further prescribed that if the contractor fails to make the deposit required, the surety company will do so; and thereupon the State may subrogate to the surety all rights " to any moneys remaining in the hands of the State * * *, which are adjudged as belonging to the Contractor-Principal."

The surety bond given in behalf of the original contractor contains corresponding provisions with reference to its obligation. It is thus seen that there is a distinct concatenation between the highway contract and the surety bond, and that they set up reciprocal rights and obligations between the State and the surety. It is the terms of the main contract, and the things done under it, that measure the obligations of the surety. And it is equally clear that the disposition of the fund directly affects the rights of the surety; and that the State is bound to insist upon its rights under the general contract for the surety's benefit.

In his opinion the learned official referee recognized that the contract and the bond " definitely fix the excess to be paid [by the surety to the State] on the basis of the amount in excess of that remaining unpaid * * * free from all liens and other incumbrances." And in that connection he states further that it " was the evident intent of the parties that valid liens and other incumbrances should be protected to the extent of funds available for the contract at the time of default." But those are not the terms of the contract nor of the bond, nor of the statute. There was no fund in existence at the time of default which could be the subject of lien or incumbrance; there was nothing *due* or *payable* to the contractor at that time, and nothing ever became due to him thereafter. The entire fund was " free from all liens and other incumbrances."

Section 5 of the Lien Law provides that liens may be created " upon the moneys of the State * * * applicable to the construction of such improvement, to the extent of the amount due or to become due on such contract." Section 60, which gives the right of foreclosure, provides that if a lien be established the judgment must direct the State " to pay over * * * so much of the funds or money which may be *due* from the State * * * to the contractor, as will satisfy such liens, * * * not exceeding the amount *due* to the contractor." And in a case where the contract has been breached by the contractor, the court " may render judgment only to the extent " of establishing the lien, but not directing the payment of money. These sections, as well as section 130, subdivision 8, of the Highway Law, render it clear that retained percentage and the amount representing work done but not certified, are not lawfully due, and, therefore, cannot be lawfully paid. It is not so much the " intent of the parties " that is important here. Those who are entitled to liens, what for, and upon what funds, are not questions of intent of the parties, but of the statute.

The respondents have cited three cases in support of their contention, but none of them may be said to be in point here. The first, *Wilson* v. *Moon* (265 N. Y. 640), was a case in which it was

held that the contract had not been terminated by default, and the surety company, standing in the shoes of the contractor, completed the work. In the second, *Schuessler* v. *Metropolitan Casualty Insurance Co.* (265 N. Y. 648), it was held the contractor had money earned and *due* at the time of default. And the third case, *Laski* v. *State of New York* (246 N. Y. 569), as explained in *Arrow Iron Works, Inc.*, v. *Greene* (260 id. 330, 341), we do not regard as an authority for the case under review.

Here there were retained percentage and earned moneys in the hands of the State Comptroller at the time of the default, but neither of these was due or payable to the contractor at that time. The State was free to use all of these moneys to complete the contract, and would be bound to do so to reduce the amount to be claimed under the surety's bond. And the fact that the bank's money was used in the progress of the work does not affect the rights of the State, nor alter its obligation to the surety. The rights of the assignee bank and of the lienors were subordinate to the superior rights of the State, as well as the superior right of the surety company, which took by subrogation the rights of the State, and whose obligations were measured only by the excess of the cost of completion over that limited by the original contract. We regard these principles and this policy as being settled by the Court of Appeals. (*Scarsdale National Bank & Trust Co.* v. *United States Fidelity & Guaranty Co.*, 264 N. Y. 159.)

The judgment should be reversed and the complaint dismissed as to the defendants State of New York and Fidelity and Deposit Company of Maryland, with costs payable out of the funds in the hands of the State Comptroller.

HILL, P. J., RHODES, CRAPSER and BLISS, JJ., concur.

The judgment entered herein August 22, 1935, is reversed on the law, with costs, and the complaint dismissed as to the defendants State of New York and Fidelity and Deposit Company of Maryland, with costs payable out of the fund in the hands of the State Comptroller.

The court reverses findings of fact contained in the report of the official referee as follows:

So much of finding twelfth, and such other findings, as find that the sum of $11,283.99, being the retained percentages and earned moneys in the hands of the State under the contract, is applicable to the payment of the liens and the assignment therein mentioned.

Finding of fact seventeenth.

All findings of fact inconsistent with the foregoing, contained in that part of the report denominated conclusions of law,