MUNICIPAL HOUSING AUTHORITY OF THE CITY OF UTICA, NEW YORK, Plaintiff, *v.* H. G. HATFIELD ELECTRIC CORPORATION, Defendant, THE ÆTNA CASUALTY & SURETY COMPANY, Appellant, and THE ONEIDA NATIONAL BANK AND TRUST COMPANY OF UTICA, Respondent.

Fourth Department, May 6, 1942.

*Frank L. Ward* and *Harry Wareham*, for the appellant.

*Miller, Hubbell & Evans* [*Leonard W. Burdick* of counsel; *S. Sheldon Judson* with him on the brief], for the respondent.

McCURN, J. The municipal housing authority of the city of Utica, N. Y., entered into a contract with H. G. Hatfield Electric Corporation for the construction and installation of the electrical work on a construction project undertaken by the authority. The Ætna Casualty & Surety Company became the surety on the performance bond. The Oneida National Bank and Trust Company received from the Hatfield Corporation an assignment as security for a loan of $1,500 previously made to the Hatfield Corporation. When the work was completed under the contract, the contractor failed to pay labor and material claims in the amount of $3,626.97 which were later paid by the surety. The housing authority had retained in its hands a balance of $1,600.01. Both the surety and the bank made claim to the fund retained by the housing authority whereupon the housing authority brought this action in interpleader and paid the money into court. Trial was had before an official referee resulting in judgment in favor of the bank. The surety company now appeals from that judgment.

On March 8, 1940, the bank loaned and delivered to the contractor the sum of $1,500 upon a promissory note of the contractor corporation. No assignment was given at that time to secure the note although it is stipulated in the record that the contractor promised the bank that it would execute an assignment upon request. The note was subsequently renewed on April 8, May

8 and June 10, 1940, without any assignment being given. The work on the contract was completed on June 10, 1940. An assignment was given by the contractor to the bank on June 27, 1940. A later assignment covering the same debt was given to the bank on August 26, 1940. On October 31, 1940, the surety paid the labor and material claims totaling $3,626.97 in accordance with its obligation as surety under the so-called performance bond.

At the time the performance bond was executed by the surety the contractor assigned to it " all the deferred payments and retained percentages arising out of this contract, and any and all moneys and properties that may be due and payable to said principal * * *." The surety now claims that both by virtue of such assignment and of its equitable right to subrogation by virtue of having performed its surety agreement it is entitled to the fund remaining in the hands of the housing authority. The bank claims that it is entitled to these same moneys by reason of its loan to the contractor together with the assignment heretofore mentioned.

The contract between the housing authority and the contractor provided that the housing authority " may, before making any payment, require the contractor to furnish releases or receipts from all persons performing work and supplying material to the contractor * * *." It provided also, " The local Authority may withhold from any payment otherwise due the contractor, so much as may be necessary to protect the local Authority against any claims that may be urged against the local Authority and if it so elects, may also withhold any amounts due from the contractor or to any sub-contractors or materialmen for labor or material furnished."

The housing authority, upon discovery of the default of the contractor in paying labor and materialmen, could pursuant to the contract have applied the retained moneys toward payment of those claims. The assignment in question here could not defeat that right. The bank as assignee stands in the place of the contractor with no other or greater rights. When the surety stepped forward pursuant to its contract of suretyship and paid these claims, it was only doing what the authority could have done to the extent of the moneys remaining in its hands. When the surety assumed the burden of paying under its contract of suretyship it stood in the place and stead of the authority and it acquired the right of the authority to resort to the moneys retained in the hands of the authority to reimburse it for its outlay. This is by virtue of the equitable principle that when a surety discharges the obligation of his principal he is subrogated to the rights of the obligee against his principal. (*Prairie State Bank* v. *United States*,

164 U. S. 227; *Arrow Iron Works, Inc.,* v. *Greene,* 260 N. Y. 330, 338; *Scarsdale National Bank & Trust Co.* v. *U. S. F. & G. Co.,* 264 id. 159.)

It was stipulated on the trial that a major portion of moneys loaned by the bank was used to pay bills for labor and materials.

The contract of surety contained a provision reading in part as follows: " And the Surety, for value received, * * * hereby stipulate(s) and agree(s) that the Obligations of said Surety and of (its) successors and assigns, and this bond shall in no way be impaired or affected by any extension of time, modifications, omission, addition or change in or to the said contract, or the work to be performed thereunder, or by any payment thereunder, before the time required therein, or by any waiver of any provision thereof, or by any assignment, subletting or other transfer thereof, or of any part thereof, or of any work to be performed, or *of any moneys due or to become due thereunder;* and the said Surety * * * does hereby waive notice of any and all of such extension, modifications, omissions, additions, changes, payments, waivers, assignments * * *."

The court below was of the opinion that since a major portion of the money loaned by the bank was used to pay bills for labor and materials and thus reduced the surety's ultimate liability, and since the surety agreed to remain bound notwithstanding assignments and lack of notice thereof, these circumstances created equitable considerations in favor of the bank sufficient to override the surety's right to subrogation.

We regard the provision in the surety contract permitting assignments as one for the benefit of the housing authority. The contract of surety with the housing authority is separate and independent of the contract between the housing authority and the contractor. The contract of suretyship was for the benefit of the housing authority and it was intended by the provision above quoted with respect to assignments, simply that the surety would remain bound to its obligations to the housing authority notwithstanding any assignments on the part of its principal or lack of notice thereof.

In any event the contractor had no interest in the retained moneys capable of assignment at the time the assignment was made. The fact that part of the moneys loaned was used by the contractor in the performance of the contract and thus reduced the ultimate liability of the contractor does not alter that situation.

In *Scarsdale National Bank & Trust Co.* v. *U. S. F. & G. Co.* (264 N. Y. 159) a bank had loaned moneys to a contractor on a State project and held an assignment therefor. The contractor defaulted

and his surety completed the contract. Both surety and bank laid claim to retained percentages remaining in the hands of the State, the bank advancing as one of its arguments that the moneys loaned by it were used in the performance of the contract and thus inured to the benefit of the surety. Judge CRANE, writing the opinion in that case, stated (at pp. 162, 163):

" It had no better rights under the contract than the contractor and, if the State, as against the contractor, could apply these earned moneys to the cost of completion, it could do the same thing as against the assignee. In other words, the moneys due at the time of the default, called the earned moneys, could and would be applied by the State in reducing the amount due on the defendant's bond.

" Does it make any difference in the application of these earned moneys that the surety company complied with the demand of the State and completed the job at its own expense? Upon what principle, or, according to what reasoning, would the earned moneys in one instance inure to the benefit of the defendant and not in the other? The answer attempted to be made is, that the assignee-bank's money went into the work and left just so much less to be completed.

" The same answer could be made to the State's claim to the money, had it finished the work. The unsoundness of this answer is apparent when we remember that the bank, or assignee, is bound by the contract with the State and has no superior rights to those given under the contract to the contractor. It is this contract which provides that the State may apply the earned moneys to the cost of completing the work after default. The bank, assignee, takes its assignment subject to this right. Therefore, it is no answer to say as against the State that the money of the bank went into the work and thus reduced the cost of completion. Of course it did, and it became entitled to all moneys due to the contractor at the time of the default, subject to the superior right of the State by its contract with the contractor to apply all earned moneys to the cost of completion."

We are of the opinion that the surety became subrogated to the moneys in the hands of the housing authority. That right arose at the time the surety executed the bond. (*Scarsdale National Bank & Trust Co.* v. *U. S. F. & G. Co.*, 264 N. Y. 159.) The contractor had no interest in the fund which he could pass to the bank at the time the assignment was executed and delivered. The judgment appealed from should be reversed on the law and facts and judgment entered in favor of the appellant Ætna Casualty & Surety Company.

All concur. Present — CROSBY, P. J., CUNNINGHAM, TAYLOR, HARRIS and McCURN, JJ.

Judgment reversed on the law and facts and judgment granted in favor of the defendant Ætna Casualty & Surety Company for $1,600.01, plus accrued interest, less county treasurer's fees, without costs. Certain findings of fact disapproved and reversed and new finding of fact and new conclusion of law made.