Isadore Bookstein, J.
The four above-entitled actions, although not consolidated, were tried together.
The actions involve four separate public improvement contracts awarded to defendant Dan-Bar Contracting- Co. Inc., *489 hereinafter referred to as “ Contractor ”, In each instance, the contract was completed by “ Contractor ” and on each contract there is a balance due to ‘ ‘ Contractor ’ ’, which is being withheld by the State by reason of claims against the funds by State Bank of Albany, hereinafter called “ Bank ” on assignments by “ Contractor ” to it, and by Maryland Casualty Company, hereinafter referred to as “ Maryland ’ ’, based on certain mechanics ’ liens, which it has paid under labor and material bonds furnished by it for “ Contractor ” pursuant to section 137 of the State Finance Law, or on its claim of rights as subrogee or as assignee or as equitable assignee.
There is no dispute as to the facts. The question to be resolved in each case is the relative priority of the claims of “ Bank ” and “ Maryland ”.
In determining the questions posed, we must, in the first instance treat the performance bonds separate and apart from the material and labor bonds. There has been no default in any of the four eases in performance by “ Contractor ” therein, insofar as completion of the work is concerned, and hence ‘ ‘ Maryland ’ ’ has incurred no liability on the performance bonds. No payments were made by “Maryland” under its payment bonds, prior to completion and acceptance of the work by the State and, in fact, the payments made by ‘ ‘ Maryland ’ ’ were made after the contract had been completed and accepted as shown by the following table:

It is thus clear that ‘ ‘ Maryland ’ ’ made no payments towards accomplishment of completion by “ Contractor ” or any of the contracts. All payments were made after completion and acceptance. Obviously, therefore, “ Maryland ” paid nothing towards completion of the contracts, all of which were completed by the “ Contractor ” with a balance due on each one from the State to the “ Contractor ”.
Clearly, then, such payments as ‘ ‘ Maryland ’ ’ made were made by ‘ ‘ Maryland ’ under its material and labor bonds.
“ Maryland ” contends, however, that since it made such payments, it has done something by way of completion of the contracts and, hence, is equitably subrogated to the rights of the State in and to the respective balances due to “ Contractor ” *490 which it holds on the four contracts. Logically, “Bank ” could make the same claim, since.its money went into, the.projects.
The difficulty with this contention, in my judgment, is the basic fact that the State has no rights in and to the funds which it holds. Those funds belong to the “ Contractor ” and not to the State. True, the State, in a sense, is interdicted against payment to the “ Contractor ”■ of the balances due it, by force of the Lien Law. If the State paid over those balances to the “ Contractor ”, it would subject itself to a possible double payment, to the extent of such payment, by reason of the rights conferred upon “Bank” and the lienors by the provisions, of the Lien Law, with which they have complied;
There is a basic difference between a performance bond and a material and labor bond. They serve and are intended to serve entirely different purposes.
The performance bond, or as it is sometimes called; the completion bond, is given pursuant to section 38 of the. Highway Law. Its purpose is to insure the State, that a contract once let will be completed within the amount for which the contract is let. If 1 *■ Contractor ’ ’• defaults, the- State, in the absence of a performance bond, would have to expend its own funds to complete the contract, even if the cost of completion were to exceed the balance unpaid on the contract. Where, however, there is a performance bond, the surety completes the contract, at its own cost and expense, and becomes equitably subrogated to the same rights as the State had in and to the unpaid balance of the contract price. The rationale for such a right of subrogation is stated so forcefully and so well in¡ the case of Scarsdale Nat. Bank and Trust Co. v. United States: Fid. and Guar. Co. (264 N. Y. 159) as to require no repetition here. Thus, if the surety comany completed the contract at a cost in excess of the balance due under the. contract, the assignee* and lienors could collect nothing thereon from the State, since their liens attach only to the balance due to the “ Contractor ” and, in, such case there is no balance due to a contractor. And since the surety, on the performance bond, in such a. situation, is subrogated to the rights of the State-, it has priority in. and to the. balance due under the contract, over the assignee and the lienors. They then can get nothing out of the balance due nor can they collect anything under the performance bond, which is solely for the benefit of the State and not for third parties.
The State as a matter of public, policy however has enacted; section. 137 of the State Finance Law. That section itself; recognizes a distinction, between a performance, bond and a. material and labor bond. So far as pertinent, it provides that *491 “In addition to other bond or bonds, if any, required by law for the completion of a work specified in a contract for the prosecution of a public improvement * * *, the comptroller may nevertheless require prior to the approval of any such contract a bond guaranteeing prompt payment * * * to all persons supplying the contractor * * * with labor and materials employed and used in carrying out the contract, which bond shall inure to the benefit of the persons supplying such labor and materials.” (Italics supplied.) The third-party beneficiaries must comply with certain provisions of the Labor Law or the Lien Law, in order to avail themselves of the benefits conferred upon them by the bond furnished pursuant to section 137 of the State Finance Law. It is true that such a bond runs to the State as obligee, but it is clearly not for the benefit or protection of the State. The State has neither any common-law nor statutory liability or obligation to pay anything to the persons providing such labor or materials, except as provided for in section 38 of the Highway Law and sections 220-a and 220-b of the Labor Law. Those exceptions are not present in the instant case. The purpose of the bond provided for in section 137 of the State Finance Law is not to protect the State against such claims as are therein sought to be protected but rather is the result of the public policy of the State to protect the persons for whose benefit it was enacted, against nonpayment for labor and material furnished in the execution of a public project, even though payment to such persons results in a total cost of the project in excess of the contract price. In other words, the State has declared its policy to be that persons furnishing labor and materials to a contractor on a public project shall be paid by the contractor, even if by so paying, the cost to the contractor to complete the contract exceeds the contract price; that such persons shall not be left exclusively to the remedies provided by the Lien Law, since there are often cases where the balance due the contractor is not sufficient to pay the lienors in full. Since the State has no obligation to make such payments, the labor and material bond is not for the benefit of the State at all. Such a bond is exacted in order that the public policy of the State that the persons for whose benefit the bond is exacted, shall be paid in full, without regard to the status of what may be due to the “ Contractor ” under his contract, or what may be due to the State, from the surety, under the performance bond.
The purpose and effect of the labor and material bond are so cogently stated in Chittenden Lumber Co. v. Silberblatt & *492 Lasker, Inc. (288 N. Y. 396) as to make repetition here unnecessary.
“ Maryland ”, nevertheless, contends that by reason of certain decisions since the Scarsdale and Chittenden cases (supra), it has priority over “ Bank ”.
If we were to suppose that 11 Maryland ’ ’ were the surety on the labor and material bonds and some other surety company were the surety on the performance bond, it seems to me that the issue to be determined would be brought into sharper and clearer focus. And the issue to be resolved must be done on that basis. The happenstance that it was the same surety on both the performance bonds and the labor and material bonds does not alter the principles applicable to a determination of the issue.
“Maryland” cites Ætna Casualty & Surety Company v. United States (4 N Y 2d 639) as authority for its position in the instant case. In that case, JEtna issued both the performance and labor and materials bonds. The contractor defaulted. The surety completed the work and paid the materialmen and laborers. How much was paid under each bond does not appear. It does appear that the cost of completion, after the contractor’s default, including what it paid to materialmen and laborers, exceeded the balances due under the two contracts. There can be no doubt that, as to the State, the tax lien of the United States was ineffectual, since there was nothing due to the contractor (the taxpayer) under the contract, and that as to the performance bond, JEtna stood in the shoes of the State, under the Scarsdale case (supra). As to the labor and material bond, there was obviously nothing due to the contractor (the taxpayer), since the cost of completion, including the payment to laborers and materialmen exceeded any balance due under the contract. There the court held that so far as the tax lien of the United States, it was “ assertable only to the extent of Horticultural’s interest, if any, in the funds retained by the Authority.” And that court determined that the contractor had no interest or ‘ ‘ property and rights to property ’ ’ under section 3670 of title 26 of the United States Code, which were subject to the Federal tax lien. And this determination obviously did not hinge on which bond was involved. The material-men’s and labor bond never gave to the contractor any property rights. His property rights came from his contract, and that right was one to receive the contract price, if he completed the contract and paid the materialmen and laborers. If he failed, and the cost of doing so exceeded the balance due under the con *493 tract, then the contractor had no property right, to which the Federal tax lien could attach. That case did not involve the rights of an assignee or of mechanics’ lienors under the Lien Law nor to their relative rights with respect to a performance bond and a labor and material bond. There each contract provided that “ as a condition precedent to his right to any partial payment, the Contractor must, as requested, submit to the Authority proof satisfactory to the Authority that Contractor is meeting his obligation to the Subcontractors, Materialmen and Workmen promptly.” In the absence of such proof, the contractor was not entitled to payment. Not being entitled to payment, there was a no property of the contractor to which the Federal lien could attach. In passing, it should be noted that the court there also stated at pages 641 and 642, that ‘ ‘ Applications for contract bond and agreement of indemnity, executed on the same respective dates, made -¿Etna the subrogee and assignee of all of Horticultural’s rights to any moneys due or to become due from the Authority under the contracts should Horticultural default in its performance of the contracts thereby requiring -¿Etna to perform under its bonds.” That assignment was apparently held' to be good as against the Federal tax lien without filing under subdivision (1) of section 25 of the Lien Law. That case did not pass on the question of the status of such an assignment, not filed, as against an assignment or a mechanic’s lien filed in compliance with that section. Moreover, it is doubtful if such an assignment could be filed under that section, since it is not such an assignment as is envisaged in that section.
The Ætna case (supra) therefore, cannot be regarded as authority for “ Maryland’s ” contention for priority.
United States Fid. & Guar. Co. v. Triborough Bridge Auth., (297 N. Y. 31) also involved a question of priority between a surety and a tax lien of the United States.
In that case (p. 34), there were not involved two separate bonds, one for performance and one for materialmen and laborers. There the “ contract required the contractor to furnish a surety bond in a specified sum and further provided, in effect, that, if the contractor failed to pay all bills for labor and materials furnished in the performance of the contract, defendant Authority should have the right to withhold out of any payments due the contractor such sums as might be necessary to insure satisfaction of such unpaid bills. On the same day, * * * the contractor as principal, and plaintiff, as surety, executed a bond in the form required by the contract. This bond was conditioned upon faithful performance of the *494 contract and upon payment of all claims for labor and materials furnished. ’ ’ In other words, in that case there was a combination performance and payment bond. The work was completed and there was a balance due the contractor of $108,904. The contractor was in default to subcontractors for labor and materials furnished to the extent of $55,611.61. United States asserted a tax lien against the contractor for $174,946.67. The surety under the bond paid the contractor’s debts of $55,611.61. The question was one of priority between the surety and the asserted tax lien of the United States. Priority was given to the surety.
That case is distinguishable from the case at bar. In that case, there was one bond for two purposes. For the distinction between such a combination bond and a payment bond, see Daniel-Morris Co. v. Glens Falls Ind. Co. (308 N. Y. 464, 468). The bond was executed pursuant to the contract between the Authority and the contractor, which contained a provision that the ‘ ‘ Authority should have the right to withhold out of any payments due the contractor such sums as might be necessary to insure satisfaction of such unpaid bills.” This contractual term of the contract undoubtedly placed upon the Authority the duty to withhold out of any payments due the contractor, the amount of any unpaid bills for the protection of the materialmen and laborers, since such persons undoubtedly furnished their material and labor in reliance on such contract and the bond to insure its performance both as to completion and as to payment of both of materialmen and laborers. In that situation, the court held that to the extent that the surety paid the amount for unpaid bills which the Authority, by contract, had the right to retain, and whose payment the surety guaranteed, the surety succeeded ‘ ‘ to all rights which defendant Authority might have against the contractor, including that of withholding money due the contractor and of applying it to the payment of unsatisfied claims for materials and labor.” Again, the surety under the contract and the bond, stood in the shoes of the Authority and had priority over the asserted tax lien of the United States. That case is in no way determinative of the issues here involved, i.e., the relative priority of the “ Bank ” and “ Maryland ”, with respect to the provisions of the Lien Law and a bond given pursuant to section 137 of the State Finance Law. It should be noted that the bond in that case was not the bond provided for in section 137 of the Finance Law and it contained no provision that it was for the benefit of materialmen and laborers.
In the instant case, there is no provision in the contract similar to the provision in the contract in the United States *495 Fidelity & Guaranty Co. case (supra) nor was there a similar bond. Nor were the relative priorities of those claiming under the Lien Law and the surety, before the court in that case. The bond in the instant case was the one required by section 137 of the State Finance Law.
First National Bank v. City of New York (177 F. Supp. 175) presented the precise question determined in the Scarsdale case (supra) and followed it. The case was one where the surety completed the project under the performance bond at a cost greatly in excess of the balance due on the contract. The court held that the surety, under the subrogation doctrine, had priority to the unpaid balance due the contractor over the bank which had an assignment from the contractor as well as over some other asserted liens and claims, including a Federal tax lien. The soundness of the determination in that ease is beyond debate.
But the situation in this case is not the same. Here, there was no completion by the surety. Here, there was completion by the ‘6 Contractor ’ ’ and in each action there is an unpaid balance due to the 6 6 Contractor ’ ’ after completion. The question in these cases is one of priority under the Lien Law, between the surety who has made payments under the bond provided for by section 137 of the State Finance Law and an assignee who has filed an assignment pursuant to subdivision (1) of section 25 of the Lien Law. •
An examination of the record on appeal in Hartford Accident and Indemnity Company v. First National Bank & Trust Company (307 N. Y. 634) does not demonstrate that there was a determination that the surety was entitled to recover as subrogee of the State nor did it determine any question of priority as between the surety and a bank assignee. The action was discontinued as against the bank assignee. The complaint set forth two causes of action, one based on subrogation and the second based on the assignments to it of the mechanics’ liens which it had paid. There was a balance of the contract price in the hands of the State after a default by the contractor and completion by the State. The State contended that such balance was forfeited to it. The Per Curiam opinion of the Appellate Division (281 App. Div. 607) in overruling that contention, said (p. 609): “It would seem contrary to public policy, as expressed in the Lien Law, to construe the contract so as to work a strict forfeiture of retained percentages for the purpose of depriving lienors of possible satisfaction.” (Emphasis added.)
This would seem to indicate that the decision in that case was based on the rights of the mechanics’ lienors to proceed to satisfy *496 their liens out of the balance remaining of the contract price, after completion of the contract, and not on the basis of subrogation. And the surety, by virtue of the assignments to it of those mechanics’ liens, stood in the shoes of the lienors and, hence, as such assignees could resort to that balance for the satisfaction of said liens.
In Fidelity and Deposit Co. of Maryland v. New York City Housing Auth. (241 Fed. 2d 142) as in the United States Fidelity & Guaranty Co. case (297 N. Y. 31, supra) the contract required as a condition precedent to payment, proof that the contractor had satisfied claims of materialmen and laborers. The contract required both a performance and payment bond. The court in that case said the performance bond was not involved, but that the payment bond was. The surety had made payments under the payment bond for labor and materials aggregating $75,650.09, as required by its bond, meaning, of course, its payment bond. The court there said (p. 144) quoting from the United States Fid. & Guar. Co. case (supra) that ‘ ‘ A failure by the contractor to pay for labor and material was just as much a failure to perform and carry out the terms of the contract as an abandonment of the work would have been. ’ ’ This is based, of course, on the terms of the contract. The case then followed to the same conclusion as the United States Fidelity & Guaranty Co. case (supra) to wit, that the contractor never became entitled to the payment of the amount paid to the materialmen and laborers, by the surety, and that, hence, the tax lien of the United States never attached to that sum.
In Massachusetts Bonding & Ins. Co. v. State of New York (259 F. 2d 33) the payments to laborers and materialmen do not appear to have been made in payment of liens. The opinion in that case at page 37 indicates that those payments were made to laborers and materialmen for work and materials furnished to the surety in the completion of the project under its performance bond, and, of course, in that situation there could be no doubt of the surety’s right to subrogation to the principal, the United States, to the extent that there were moneys due from the United States to the contractor. In the opinion in that case (p. 38), Century Cement Mfg. Co. v. Fiore (264 App. Div. 475) is cited as a comparison. The case also holds that the surety’s rights as subrogee were superior to the tax lien of the United States, citing United States Fidelity & Guaranty Co. v. Triborough Bridge Auth. (supra).
The case of Century Cement Mfg. Co. v. Fiore (264 App. Div. 475) which was decided by a divided court of 3 to 2, apparently sustains the contention of “ Maryland ” that as to *497 the mechanics’ liens which it paid, by subrogation, it has priority over “Bank”.
In that case, the contractor defaulted and the State completed the contract and there then remained a balance of the contract price. The court awarded the fund to the surety, on payment bond, although the surety did nothing by way of completion under its performance bond and sustained no loss thereunder. Clearly, therefore, the award was made to it under the payment bond. The majority decision was premised largely on the decision of the Court of Appeals in the Scarsdale case (supra).
The majority opinion said (p. 479): “ Scarsdale National Bank & Trust Co. v. U. S. Fidelity & Guaranty Co. (264 N. Y. 159) involved what is in effect the precise question presented here.” It is difficult to reconcile that statement with the facts and question presented in the Scarsdale case.
That was a case where the contractor defaulted and the surety completed the contract under its performance bond, at a cost in excess of the contract price. The award there was to the surety, of the performance bond, as subrogee of the State, which, in the absence of the performance bond, would have been required to complete the contract itself. No question of any payment bond was involved in that case.
While complete candor compels me to say that I am convinced that the minority opinion in the Century case (supra) was the correct one, I realize that a trial court cannot base its decision on the minority opinion, rather than on the majority opinion of a higher court. The case is, however, at least, distinguishable from the instant ones, in that in these cases there was no default under any of the contracts, whereas in the Century case (supra) there was a default.
Accordingly, I do not believe the Century case is controlling in these cases.
Municipal Housing Auth. v. Hatfield Elec. Corp. (264 App. Div. 99) is also distinguishable, because there the contract contained a provision whereby the Authority could withhold money earned under the contract for the purpose of paying laborers and materialmen. In that case there was no payment bond but only a performance bond and a default on the part of the contractor. The contracts involved in these cases contain no such provision and there has been no default in performance.
So, too, in Hedley v. New Amsterdam Casualty Co. (267 App. Div. 800, affd. 293 N. Y. 921) the contract contained a provision, not present in the cases here involved, permitting the State to retain money for the purposes of paying laborers and materialmen.
*498 The affirmance by the Court of Appeals in the Hedley case was without opinion. Obviously, that means that the result arrived at was affirmed but does not necessarily mean affirmance of the opinion below. It is significant that in the Court of Appeals statement of the case there appears the following sentence (p. 922): “The counterclaim was based upon the bank’s participation, in alleged derogation of the rights of the lienors, in a diversion by the contractor of moneys made 1 trust funds ’ by section 25-a of the Lien Law.” Whether that factor entered into the determination by the Court of Appeals to affirm the judgment below is, of course, a matter of pure speculation. However, it seemed an important enough factor for that court to mention.
The State has no right, any more than an individual to withhold moneys for the payment of materialmen, without a contract provision or statute permitting or requiring it to do so. (Carden Realty Corp. v. State of New York, 260 App. Div. 459, 467-468.)
“Maryland” is alternately contending for priority over “ Bank ” on three different theories, viz:
(1) An equitable assignment of the funds in the hands of the State, by virtue of the assignment in the indemnity agreements contained in the applications to it for the payment or labor and material bonds;
(2) Equitable subrogation to the rights of the State to the balance which it holds;
(3) Assignments to it of various mechanics’ liens by various lienors.
To sustain any of “ Maryland’s ” contentions would, in effect, nullify the plain provisions of the Lien Law.
As to the first contention, the so-called equitable assignment cannot have priority over ‘ ‘ Bank ’ ’.
Section 16 of the Lien Law provides that an assignment of money to grow due under a public improvement shall have no validity until filed and that every such assignment, not recorded, shall be absolutely void as against a subsequent assignee in good faith for a valuable consideration whose assignment is first duly recorded.
Pursuant to section 16 of the Lien Law, “Bank” filed its assignment. “ Maryland ” never did file one. As to “ Bank ”, therefore, “Maryland’s” assignment contained in the application to it for the bond to be furnished by it is void.
In Shore Bridge Corp. v. Utica Structural Steel (268 App. Div. 714, affd. 295 N. Y. 619) the court said (p. 716): “ The validity and effect of the assignments, good at common law, *499 are qualified only by the statute.” The reference to the statute is a reference to the Lien Law.
And in Matter of S. Leto Construction Corp. v. Herkimer Construction Corp. (13 Misc 2d 598) the court said, (p. 600): “ The provisions of the Lien Law with respect to the rights of lienors and assignees govern the rights and remedies of the lienors and assignees between themselves.” (See, also, Lee v. Bailey Corp., 267 N. Y. 161.)
So far as “ Maryland’s ” claimed equitable lien is concerned, the assignment to “ Bank ” has priority.
The second contention of “ Maryland ” cannot be sustained since the State, neither by contract, nor by statute, was required to pay the laborers or materialmen the obligations due them from the “ Contractor ”, nor even to require evidence of payment, before making payments to the “ Contractor ”. When “ Maryland ” paid the lienors under its payment bond as surety, it was not discharging any obligation of the State, which would give rise to any right of subrogation to the funds held by the State. The State does not own the balances on hand. With respect to them, it is a mere stakeholder. As a matter of self-protection, it cannot pay the money over to anyone, without the liens and assignment being satisfied or until the priority of the claimants is determined in these actions. There would undoubtedly arise in favor of “ Maryland ” equitable subrogation to the status of the lienors, if it paid them, under its bond, without taking assignments of their liens. In that case, as to priority, “ Maryland ” would stand in the same position as the lienors.
As to the third proposition, “ Maryland ”, as assignee of certain mechanics’ liens, simply stands in the shoes of its assignor, and, the question of priority remains the same as if the original lienors were before the court.
Section 25 of the Lien Law grants priority to an assignee whose assignment is duly filed prior to the filing of a notice of lien to the extent of advances made upon such assignment before the filing of the notice of lien.
It is undisputed in each case that the amounts advanced by ‘ ‘ Bank ” were advanced prior to the filing of the first mechanic’s lien.
Accordingly, I find that “Bank” in each action is entitled to priority over “Maryland”, with the result hereinafter indicated.
In Action No. 1, Calendar No. 555, Contract No. HC-2151, the amount due to contractor from the State is $26,753.37. ‘ ‘ Bank ’ ’ filed its assignment March 27,1952. The first mechan *500 ic’s lien was filed May 10, 1954. Before the filing of snch first lien, “ Bank ” had advanced $25,000. Interest thereon to September 15, 1959 amounts to $6,916.62, representing a total of $31,916.62, claimed by “ Bank ” against the balance of $26,753.37 due to ‘ ‘ Contractor ’ ’ from the State as of September 15, 1959. On this contract, “Maryland” issued both the performance bond and the labor and material bond. Lehigh Portland Cement Co. filed a lien May 10, 1955 for $7,832.13 and Charles Boder filed one on January 14, 1.955 for $4,885.50. “ Maryland ” pursuant to its labor and material bond, paid Boder $4,885.50 on May 26, 1955, and “ Maryland ” paid Lehigh Portland Cement Co. $7,832.13 on June 23, 1955. These two liens thus paid by “Maryland” aggregate $12,717.63. “Maryland” claims priority over ‘ ‘ Bank ’ ’ for that amount as subrogee. The lien of Lehigh Portland Cement was assigned to “ Maryland ” June 23, 1955 and the lien of Charles Boder was likewise assigned to “ Maryland ” June 23,1955, and it is so alleged in the answer of “Maryland”, which also alleges an assignment in the application for a bond and also claims priority by subrogation.
In Action No. 1, therefore, “Bank” has priority and is entitled to payment of the entire balance on the contract, held by the State, to wit, $26,753.37 and to a deficiency judgment against “ Contractor ’’for$5,163.25 and “ Maryland ” is entitled to a judgment against “ Contractor ” for $12,717.63.
In Action No. 2, Calendar No. 556, Contract No. HC-2502, “ Bank ” filed its assignment on- October 15, 1952. The balance due “Contractor” from the State is $67,258.98. “Bank” advanced under said assignment prior to the filing of the first mechanic’s lien, the sum of $174,343.98. Kenneth Fidler filed a lien on May 10, 1955 for $13,485.01; F. J. Croissant filed a lien on June 30, 1955 for $804.15. “Maryland” paid under its labor and material bond, dated September 18, 1952, the Fidler lien on June 28, 1955; paid the Croissant lien on April 2, 1956 and paid the Elliott lien on April 5, 1956. These liens aggregated and “Maryland” thus paid $21,216.75 and now claims priority over “ Bank ” as subrogee.
This action was brought by “ Maryland Casualty Company, as assignee of Frank J. Croissant”. The summons and complaint are so entitled and allege that Croissant assigned his claim for his public improvement lien to “Maryland” on or about June 29,1955. As is seen above, the lien was filed June 30, 1955. The complaint is solely one for the foreclosure of the lien under the Lien Law. There is no claim in the complaint as a subrogee or as an assignee on the part of plaintiff.
*501 In Action No. 2, therefore, ‘Bank” is entitled to priority and to payment of the balance held by the State, to wit, $57,258.98 and to a deficiency judgment against “ Contractor ” for $107,-085 and “Maryland” is entitled to judgment against 1 ‘ Contractor ’ ’ for $21,216.76.
In Action No. 3, Calendar No. 557, Contract No. HC-2877, “Bank” filed its assignment April 28, 1954. Prior to the filing of the first mechanic’s lien, “Bank” advanced under said assignment the sum of $20,104.28. The balance due “ Contractor ” from the State is $20,072.58.
Gulf Oil Corporation filed a lien on December 16, 1954 for $9,864; Baldwin Hall Co. Inc. filed a lien on December 17, 1954 for $12,800.87; American Bitumals & Asphalt Co. filed a lien on December 27, 1954 for $2,980.55 and Graybar Electric Company, Inc., filed a lien on January 10, 1955 for $2,185.26. “ Maryland ” under its labor and material bond paid Baldwin Hall Co. Inc. on April 19, 1955 the amount of its lien; paid Graybar Electric Company, Inc., on April 29, 1955, the amount of its lien; paid American Bituminals & Asphalt Co. on May 5, 1955 the amount of its lien; and paid Gulf Oil Corporation on May 9, 1955, the amount of its lien. The aggregate of these liens and thus the aggregate of the payments by “ Maryland ” is $27,830.68 for which “Maryland” claims priority over “ Bank ”.
This action is by State Bank, as plaintiff, and alleges that “Maryland” filed assignments to “Maryland” of said liens. In its answer, “Maryland” asserts its claim of subrogation. No claim seems to be made under the assignment or indemnity agreement in the application for the bond.
In Action No. 3, therefore, “Bank” is entitled to priority and to be paid out of the balance held by the State, the sum of $20,104.28, and to a deficiency judgment against ‘ ‘ Contractor ’ ’ of $31.70 and “Maryland” is entitled to a judgment against “ Contractor ” of $27,830.68.
In Action No. 4, Calendar No. 558, Contract No. HC-1981, F. J. Croissant is plaintiff. In this action, the balance due to “ Contractor ” from the State is $121,365.89. “Bank” filed its assignment March 31, 1952. Prior to' the filing of the first lien, “Bank” advanced under the assignment the sum of $75,000. Interest thereon to September 15, 1959 amounted to $20,750.07, making the aggregate due to “ Bank” on that date $95,750.07. Interest is running on that amount at the rate of $10.4167 per day.
*502 Liens were filed as follows:
Agnes Miller Maclnnes, as Executrix, August 25, 1953 ....................................... P. J. Croissant — September 2, 1953............. Eastern Rock Products Inc.— September 23,1953.. Walton East Branch Foundry Corp., Nov. 6,1953.. Total of said liens........................ “Maryland” pursuant to its labor and material bond made payments to said lienors, as follows: Dec. 17, 1954 Eastern Rock Products.......... Dec. 17, 1954 Walton East Branch Foundry Corp......................... Jan. 26, 1955 F. J. Croissant.................. Apr. 19, 1955 Agnes Maclnnes, Executrix...... The total of such payments is............... Total amount of liens...................... Amount paid by “ Maryland ”.............. Difference between amount of liens and amount paid ....................................... This difference arises as follows: Croissant lien .................... $9,747.41 Payment to Croissant.............. 8,439.76 Amount less than lien paid................... Maclnnes lien..................... 2,750:00 Payment to Maclnnes.............. 2,230.00 Amount less than lien paid Total amount less paid than amount of those two liens ............................... Eastern Rock lien................. $31,429.61 Amount paid ..................... 31,499.61 Excess paid over amount of lien Difference ................ $2,750.00 9,747.41 31,429.61 1,532.00 $45,459.02 $31,499.61 1.532.00 8,439.76 2.230.00 $43,701.37 $45,459.02 43,701.37 $1,757.65 $1,307.65 520.00 $1,827.65 70.00 $1,757.65
On the trial it was agreed that the difference is not material, as it represented an adjustment with the lienors of the correct balance due.
In addition to the aggregate of payments made by “ Maryland ” of $48,701.87 to the above-mentioned lienors, “ Maryland ” paid to Triple Cities Construction Co. the sum of $37,500, the nature of which will be hereinafter discussed. Thus *503 44 Maryland ” has paid out a total of $81,201.37, for which it claims priority over ‘4 Bank ’
Answer of 4 4 Maryland ’ ’ verified May 14, 1954 alleges indemnity agreement from 44 Contractor ”, in application for bond and an assignment therein.
In this action, 44 Maryland ” claims priority for $37,500 paid by it to Triple Cities Construction Co.
The history of that matter becomes important. It appears that Triple Cities Construction Co. (hereinafter referred to as 44 Triple”) filed a mechanic’s lien for something over $50,000. It permitted the lien to expire. Thereafter, it brought an action against the 44 Contractor ” and against 44 Maryland” on its payment bond. 44 Maryland ” moved to dismiss the complaint on the ground that the lien had expired. Special Term denied the motion. The Appellate Division reversed Special Term and granted the motion, with leave to plaintiff to serve an amended complaint. (285 App. Div. 299.) The Court of Appeals affirmed the order of the Appellate Division. (309 N. Y. 665.) 44 Triple ” served an amended complaint. Upon trial of the action, 44 Triple ” recovered a judgment against 44 Maryland ” for $70,000, on a finding by the jury of waiver and estoppel. The Appellate Division reversed the judgment on the law and the facts and dismissed the complaint. (5 A D 2d 91.) The Court of Appeals reversed the Appellate Division but could not reinstate the judgment, since the reversal of the Appellate Division was on the law and the facts and hence held that the case would have to be retried. (4 N Y 2d 443.) In reversing the Appellate Division, the Court of Appeals held that the evidence supported a finding that 44 Maryland” was estopped from asserting plaintiff’s failure to foreclose its lien as a defense, because of misconduct on the part of 44 Maryland ”.
44 Triple’s ” amended complaint and the allegations therein demonstrate that its action could be successful only on the basis of estoppel against4 4 Maryland ’ ’, by reason of wrongful conduct on its part, to assert the defense of expiration of 44 Triple’s ” lien.
Subsequently, a jury was drawn for the retrial. After it was drawn, the action was settled for $37,500 and a stipulation of settlement entered into, which among other things, recited that 44 action is discontinued and that the complaint of Triple Cities Construction Co. be withdrawn and dismissed so far as it may be based upon any tortious conduct attributable to defendant ”. It further provided for an assignment of its lien and former judgment.
*504 ‘ ‘ Bank ’ ’ was not a party to that action or to the stipulation. Nor is there any claim that such stipulation was made known to “Bank” before it was made or that “Bank” consented thereto.
“Maryland” could not breathe new life into the corpse of “ Triple’s ” expired lien by what it did here, vis-a-vis “ Bank ”.
The assignment of the lien of “Triple” to “Maryland” was an assignment of a nonexistent lien. The lien had expired. It is true that if there was liability against ‘ ‘ Maryland ’ ’ it was on its payment bond, given pursuant to section 137 of the State Finance Law. But its liability no longer existed under that law, since the lien had expired. Its liability came from the fact that it was estopped by its wrongful conduct, from asserting that defense, which, without its wrongful conduct, would have been an absolute and inescapable defense. The stipulation does not alter the basic facts or revive the lien or give to 11 Maryland ’ ’ any right of subrogation as against ‘ ‘ Bank ’ ’.
At most its situation as far as ‘1 Bank ’ ’ is concerned is that of an assignee of the claim of “Triple” against the “ Contractor ”.
Moreover, in this action, ‘ ‘ Maryland ’ ’ has served no answer on ‘ ‘ State ’ ’ as required by section 264 of the Civil Practice Act. Such failure would seem to result in a waiver of the claimed lien on which “ Maryland ” relies. (Perlmutter v. Gross, 266 App. Div. 694; Atlantic Terra Cotta Co. v. Rubenfield Const. Corp., 126 Misc. 279.)
In Action No. 4, therefore, “Bank” is entitled to priority over “ Maryland ” and out of the balance held by the State is entitled to payment of $95,750.07 with interest on $75,000, at the daily rate of $10.4167 to the date of judgment. ‘ ‘ Maryland ’ ’ is entitled to the balance of the fund on hand with the State, to wit, $25,615.82, less $10.4167 per day on $75,000 from September 15, 1959 to the date of judgment, and “Maryland” is also entitled to a deficiency judgment against “ Contractor ”, for $55,585.55 plus $10.4167 per day on $75,000 from September 15, 1959 to the date of judgment.
Submit findings of fact, conclusions of law and judgments accordingly.