Milton Albert, J.
The State of New York, acting through the Health and Mental Hygiene Facilities Improvement Corporation (Corporation) as its agent, contracted through the State Office of General Services (OGS) on June 3, 1973 with Sentry Security Corporation (Sentry) to install certain electrical work at the Rockland State Hospital. The contract was in the sum of $142,740.
As part of its contract, Sentry was required to provide a performance bond in favor of the State of New York. The performance bond was issued on June 7, 1973, by the claimant, Safeco Insurance Company of America (Safeco) as surety.
Alleging poor performance by Sentry, OGS terminated Sentry’s performance of the contract on November 29, 1974, and called upon Safeco to complete the work in accordance with the provisions of the performance bond. At that time, only *865 $7,645.12 of work had not been completed by Sentry; also, $7,217.87 representing completed work was retained by the State pursuant to the terms of the contract. These totaled $14,862.99.
Safeco communicated with OGS to determine whether the balance due on the contract would be available to Safeco to complete the contract. OGS agreed that the balance would be available to Safeco. As stated above, the unexpended balance, including retainage, was in the sum of $14,862.99. Thereafter, Safeco undertook its obligation under the bond and completed the contract. In so doing, Safeco expended more than the unpaid balance due under the contract.
The work was accepted by the Corporation on February 17, 1976. The Corporation notified OGS of the acceptance and of the Corporation’s approval of the final payment of $14,862.99.
Thereafter, on February 17, 1976, Safeco submitted the required contractor’s application for payment of the contract balance still due under the contract, which form was approved by the Corporation and OGS on February 27, 1976, and request for payment was sent to the State Comptroller (Comptroller) by the Corporation.
On November 1, 1974, the State Tax Commission issued a warrant against Sentry for sales taxes due the State of New York for the period of August 31, 1971 through May 31, 1974 in the amount of $20,921.45. This warrant was received by the Comptroller on November 20, 1974. The State Tax Commission also issued a levy dated February 18, 1976, which was received by the Comptroller on February 24, 1976. The Comptroller issued a check to the State of New York in the sum of $14,862.99 representing the final payment under the contract. This was in partial satisfaction of the State Tax Commission’s warrant and levy.
Claimant has filed the instant claim seeking an award of $14,862.99, the moneys allegedly due it for the completion of the contract. The State here moves to dismiss the claim on the grounds that (1) this court does not have jurisdiction in that there is no issue with respect to the amount due, but only as to whom it is due and to whom it is to be paid and that (2) this court does not have jurisdiction to issue orders in the nature of mandamus.
The court has examined the claim as filed. It is an action based on contract. The contract sets forth that the Corporation was acting "for and in behalf of the State of New York” *866 its disclosed principal. The action, therefore, is against the principal and not the agent. Although the sum of money sought seems to be agreed upon, the right of claimant to the money under the claim has not been adjudicated nor reduced to judgment. The cases cited by defendant with respect to jurisdiction are distinguishable in that they concerned themselves with the enforcement of judgments. The Court of Claims does not have jurisdiction to enforce a judgment, but it does have jurisdiction to hear and determine all claims against the State and to make awards therefor (Williams Press v State of New York, 45 AD2d 397, 403, revd on other grounds 37 NY2d 434). The motion of the defendant with respect to a dismissal for lack of jurisdiction is denied.
In its reply affidavit, claimant, alleging no issue of fact to be resolved, asked for summary judgment. The court heard argument on the return date, February 8, 1977, with respect to the issues raised by the parties and adjourned the argument to February 14, 1977 for further consideration.
No issue of fact remains to be determined. In accordance with claimant’s request and pursuant to CPLR 3211 (subd [c]), the court now treats the motion as one for summary judgment, the parties having had adequate notice thereof at the argument on February 8, 1977 and have responded thereto.
At the time of Sentry’s discharge, there remained available $14,862.99 under Sentry’s contract with the Corporation for completion of the contract. Of this sum, $7,217.87 represented the retainage held pursuant to the contract, and the balance of $7,645.12 represented work yet undone.
At this juncture, the court believes that it should examine the nature of the Comptroller’s position because if the Comptroller’s position is that of owner, one body of law obtains, and if the Comptroller is a stakeholder, another body of law obtains.
The Health and Mental Hygiene Facilities Improvement Corporation was created as a public benefit corporation with an existence separate and independent from the State (L 1968, ch 359, in effect at the time Sentry’s contract was signed). Among its purposes was timely to facilitate the rehabilitation or improvement of health facilities and mental hygiene facilities in full co-operation with the State Departments of Health and Mental Hygiene. As such, the Corporation could act as the agent for the State Housing Finance Agency by agreement with OGS.
*867 For the financing of the improvements, the Corporation was permitted to receive funds from the State Housing Finance Agency and was required to deposit such funds with the Commissioner of Taxation and Finance to be held in separate accounts and not comingled with other funds. Funds of this type were required to be paid out by checks signed by the Commissioner of Taxation upon requisition of the Corporation (Health and Mental Hygiene Facilities Improvement Act, § 9, subd 3). However, moneys received by the Corporation by appropriation from the State and advances from the State were not subject to such payment and account directions (Health and Mental Hygiene Facilities Improvement Act, § 9, subd 3, par b).
In the instant situation, the moneys were being disbursed by the Comptroller. The source, therefore, had to be by way of appropriation and/or advance from the State. Thus, it appears to the court that the Comptroller was not acting in the capacity of a stakeholder with no interest in the moneys, but rather was acting in the capacity of an owner who was paying out its own money.
The surety acquires an equitable lien at the time it executes the performance bond (United States Fid. & Guar. Co. v Triborough Bridge Auth., 297 NY 31, 36). A surety who performs under such a bond upon the contractor’s default has an equitable lien upon the funds held by the owner. The lien arises upon execution of the bond although it does not become enforceable until the surety suffers a loss by making payments pursuant to its obligation under the bond (Aetna Cas. & Sur. Co. v United States, 4 NY2d 639, 644). Scarsdale Nat. Bank & Trust Co. v United States Fid. & Guar. Co. (264 NY 159) is to the same general effect. The performance bond was executed on June 7, 1973 and, therefore, its lien arose as of that date.
With respect to the sales and use taxes, the State Tax Commission is authorized to issue a warrant, directed to a Sheriff, commanding him to levy against property of the person liable for the tax. When the Sheriff files a copy of the warrant with the county clerk, it becomes a lien (Tax Law, § 1141, subd [b]). The Tax Commission can, in its discretion, issue a warrant of like terms, force and effect, directed to any officer or employee of the Department of Taxation and Finance. In the instant case, the warrant was issued by the State Tax Commission against Sentry on November 1, 1974 and it was filed in the office of the Clerk of New York County *868 on November 7, 1974. The tax collector’s levy -was issued February 18, 1976.
It would thus appear that the lien of the Tax Commission was subsequent to the lien of the surety.
The State also claimed that it had the right to set off the amount due it by Sentry for taxes, against the moneys due under Sentry’s original contract. The State could set off against Sentry any debt due to the State by Sentry against any funds or property belonging to Sentry in the State’s hands (Canale v New York State Dept. of Taxation & Finance, 84 Misc 2d 786).
With respect to the $7,645.12, representing work not completed, the court finds that such sum cannot be regarded as property of or as an asset of Sentry because Sentry had not done the work to earn the same and was not entitled thereto. Therefore, that sum in the State’s hands was in no event subject to setoff by the State. The fact that Safeco completed the work did not improve the position of the State because if Safeco had refused to complete and had left the State in a position where the State would have had to secure another contractor to complete the work and then charge Safeco for the cost, such $7,645.12 would not have been the subject of setoff by the State. By going forward, this court does not believe that Safeco, in effect, earned such sum for Sentry and in so doing made such sum subject to setoff by the State (cf. Scarsdale Nat. Bank & Trust Co. v United States Fid. & Guar. Co., supra, pp 162-163).
With respect to the retained percentage money — $7,217.87— which Sentry had earned and which, therefore, could be considered the property of Sentry in the State’s hands, the court finds that United States v Munsey Trust Co. (332 US 234) and United States Fid. & Guar. Co. v Triborough Bridge Auth. (297 NY 31, supra) must be looked to for the answer as to disposition. In Munsey, the United States Supreme Court held that where the moneys involved were held by the owner who asserted a right to setoff, such right was superior to a prior lien of a bonding company. In effect, the United States Supreme Court held that the Federal Government, as owner, was the best secured of creditors and, accordingly, affirmed the Government’s right of setoff. The following quotation from Munsey is pertinent (p 240):
"But the surety urges that it is subrogated also to the rights of laborers and materialmen whom it paid and of the United *869 States. From Prairie State Bank v. United States, 164 U. S. 227, to American Surety Co. v. Sampsell, 327 U. S. 269, we have recognized the peculiarly equitable claim of those responsible for the physical completion of building contracts to be paid from available moneys ahead of others whose claims come from the advance of money. But in all those cases, the owner was a mere stakeholder and had no rights of its own to assert. Respondent tells us that here the United States is in the same position and that as a general creditor, it has no more right to the money which it holds than does any other general creditor of the contractor.
"At the time demand for payment was made by the receiver, the claim of the United States on the St. Louis contract was extant for some time. The disbursing officers, therefore, did not concede that they held the entire amount of the retained percentages for distribution to the contractor or others. And one whose own appropriation and payment of money is necessary to create a fund for general creditors is not a general creditor. He is not compelled to lessen his own chance of recovering what is due him by setting up a fund undiminished by his claim, so that others may share it with him. In fact, he is the best secured of creditors; his security is his own justiñed refusal to pay what he owes until he is paid what is due him. "(Emphasis supplied.)
Munsey was cited, apparently with approval, by the Court of Appeals in United States Fid. & Guar. Co. v Triborough Bridge Auth. (297 NY 31, 36 supra) as follows: "The Supreme Court’s recent decision in United States v. Munsey Trust Co. (332 U. S. 234), neither reaches nor points a contrary result. There, the Government, itself in possession of the fund, asserted a claim of its own by way of setoff and, to the extent of that setoff, the fund upon which the surety’s lien could operate was necessarily reduced. Quite different is such a case from one like the present — as the Supreme Court observed— where 'the owner [defendant Authority herein] was a mere stakeholder and had no rights of its own to assert.’ (United States v. Munsey Trust Co., supra.)”
Accordingly, this court concludes that in the instant situation the State, as owner, had a right of setoff that was superior to the bonding company’s lien, even though that lien came into existence before a formal lien proceeding was perfected by the State. In short, paraphrasing the decision of United States Supreme Court in Munsey, the State was the *870 best secured of creditors because it had established the fund and it had a right of justified refusal to pay what it owed until it was paid what was due to it.
In conclusion, this court, in effect, has found that with respect to $7,645.12, representing work not completed, the State had no right of setoff because this money had not been earned by or on behalf of Sentry and that as to $7,217.87, the State, as owner, had a right of setoff even though Safeco’s lien was prior to that of the State’s formal lien.
Accordingly, the motion of the claimant for summary judgment is granted to the extent of $7,645.12 together with interest thereon from March 18, 1976, 30 days after claimant submitted the contractor’s application for payment, to the date of entry of judgment.
The clerk of the court is directed to enter summary judgment in the sum of $7,645.12, together with appropriate interest.