Albert A. Blinder, J.
FACTS
Claimant moves for summary judgment. The claim which was filed on October 4, 1976 seeks the sum of $1,699.59 and indicates that the claimant issued a performance bond for Jo-Gar Construction, Inc. (hereinafter Jo-Gar) which bound the claimant as surety for the completion of the work[1] which Jo-Gar agreed to perform pursuant to a contract entered into between Jo-Gar and the New York State Department of Environmental Conservation (hereinafter the State agency).
In addition to the performance bond, which was issued on June 26, 1972, the claimant issued a labor and material bond on the same date which obligated the claimant as surety for Jo-Gar to pay all moneys due to all persons furnishing labor and material in connection with the work performed pursuant to the contract.
On October 16, 1973 Jo-Gar’s contract was terminated on the ground that Jo-Gar had failed to complete the work as required. After demand, the claimant entered into an agreement with the State agency whereby the claimant agreed to complete the work in accordance with the performance bond *185 it had furnished. Claimant asserts, and it is not disputed, that at the time when it was called upon to take over and complete the project, the unpaid contract balance was $11,241.27.[2]
The State agency and the claimant entered into a contract dated December 7, 1973 in which the completion date was extended to April 15, 1974 and the surety agreed to take over and complete the punch list and uncompleted items which remained on the project. The claimant retained another contractor at an expense of $12,000 for completion of the work, naming the contractor as its agent. Thereafter, the claimant’s agent performed the necessary work and completed all work under Jo-Gar’s contract with the State agency.
On November 13, 1974 the State agency advised that the work to be performed pursuant to the contract was complete; additionally, it was stated "[w]e have determined that there are no set-off claims or any charges due against this contractor.”
Claimant alleges that the total sum paid to creditors of Jo-Gar and also to its agent for completion of the work under the contract totaled the sum of $29,884.95.[3]
Upon completion of the work, the claimant demanded the sum of $11,241.27, the agreed contract balance. Thereafter, the State issued two checks payable to claimant, both of which were dated August 9, 1976. The two checks totaled the sum of $9,541.68. By a letter dated August 11, 1976 from the Department of Audit and Control of the State Comptroller’s office, claimant was advised that the sum of $1,699.59 was retained due to the filing of a New York State Department of Labor unemployment insurance claim against Jo-Gar. Claimant thereafter filed the instant claim alleging full completion of the Jo-Gar contract and entitlement to the full contract balance without offset.
In the defendant’s answer to the claim which was filed on January 4, 1977, the defendant asserts as an affirmative defense the filing by the New York State Department of Labor of unemployment insurance claims arising out of the performance of the subject contract.[4]
*186 THE CONTENTIONS OF THE PARTIES
Claimant contends that it, under the equitable doctrine of subrogation, upon completing the project in accordance with the terms of the performance bond, succeeded to all the rights of the State of New York to any funds owed to Jo-Gar pursuant to the construction contract and that these rights relate back to the date of the execution of the bond. It is contended that at the time the claims by the New York State Department of Labor were filed, there was no money due Jo-Gar to which those claims could attach.
The defendant in opposition contends that the balance of $11,241.27 remaining unpaid to Jo-Gar contained within and included the sum of $5,292.50 of retainage which was previously earned by the contractor. The defendant contends that the State of New York as owner, has a right to set off against these moneys the lien of the State with respect to unemployment insurance claims. The defendant asserts that claimant is not entitled to summary judgment and that the court should grant summary judgment as a matter of law to the State of New York on its superior right to set off the amount of unemployment insurance claims as raised in its answer by way of an affirmative defense.
THE ISSUE
The issue is whether the Comptroller has the right to set off claims of the State against moneys payable by the State.
THE LAW
The defendant argues that pursuant to constitutional and statutory authority the Comptroller has the right to set off claims by the State against moneys payable by the State and cites as authority for this proposition Capitol Distrs. Corp. v Kent’s Rest. (173 Misc 827) and also Canale v New York State Dept. of Taxation & Fin. (84 Misc 2d 786). The defendant’s attorney argues that at the time the Jo-Gar contract was terminated, the State was in possession of $5,292.50 which was previously earned by Jo-Gar and retained pursuant to the original contract. Since this sum of money was the property of Jo-Gar in the State’s hands, the State had a valid right to set off against it the amount required to satisfy the unemployment insurance claims filed by the New York State Depart *187 ment of Labor. It is submitted that the State’s right of setoff[5] is superior to the rights of the surety.
The Comptroller of the State is vested with broad powers when he acts for the State in its fiscal affairs generally and the payment of any money under the State’s control is void unless approved upon audit by the Comptroller (NY Const, art V, § 1). There are numerous authorities stating that the Comptroller has the right to offset any valid claim of the State against one to whom money under his control is due from the State. (Chemical Bank N. Y. Trust Co. v State of New York, 27 AD2d 427, 428-429; Canale v New York State Dept. of Taxation & Fin., supra, 84 Misc 2d 786, 789; Capitol Distrs. Corp. v Kent’s Rest., 173 Misc 827, supra.)
The defendant relies heavily on Judge Albert’s recent decision in Safeco Ins. Co. of Amer. v State of New York (89 Misc 2d 864). The Safeco decision is clearly in point and decided the issue of whether the State had a right to set off sales tax against retained funds as against a surety which completed work under a performance bond. Safeco held that the State had the right to set off sales tax despite the fact that the surety’s equitable lien came into existence prior to the State’s formal perfection of its tax lien.
One of the Key decisions on this point is United States v Munsey Trust Co. (332 US 234) in which the United States Supreme Court held that the United States had a right to set off against retained moneys its own claims against the contractor on another contract stating that the Government’s claims were superior to the claims of the surety who paid labor and materialmen. The Munsey (supra) decision was discussed in United States Fid. & Guar. Co. v Triborough Bridge Auth. (297 NY 31, 36) where Judge Fuld stated: "[t]here, the Government, itself in possession of the fund, asserted a claim of its own by way of setoff and, to the extent of that setoff, the fund upon which the surety’s lien could operate was necessarily reduced. Quite different is such a case from one like the present — as the Supreme Court observed— where 'the owner [defendant Authority herein] was a mere stakeholder and had no rights of its own to assert.’ (United States v. Munsey Trust Co., supra.)”
Claimant submits that a contrary result was reached on *188 similar facts in Trinity Universal Ins. Co. v United States (382 F2d 317, cert den 390 US 906). The Trinity case held to the contrary and distinguished United States v Munsey Trust Co. (supra) stating that the distinction between Munsey lies in the' fact that Munsey dealt with a situation where labor and materialmen were paid by the surety who had no rights to which it could be subrogated and the court in Munsey therefore rejected the surety claim to the retainage free from setoff. In Trinity the Fifth Circuit stated (p 320): "A different situation occurs when the surety completes the performance of a contract. The surety is not only a subrogee of the contractor, and therefore a creditor, but also a subrogee of the government and entitled to any rights the government has to the retained funds. If the contractor fails to complete the job, the government can apply the retained funds and any remaining progress money to costs of completing the job. The surety is liable under the performance bond for any damage incurred by the government in completing the job. On the other hand, the surety may undertake to complete the job itself. In so doing, it performs a benefit for the government, and has a right to the retained funds and remaining progress money to defray its costs. The surety who undertakes to complete the project is entitled to the funds in the hands of the government not as a creditor and subject to setoff, but as a subrogee having the same rights to the funds as the government.”[6]
There is undeniable logic in the holding of the Trinity (supra) decision and we do not think that this court should preclude a consideration of the equitable considerations involved. Under the basic principles of subrogation, when a surety company, complying with a performance obligation, completes a particular job, it succeeds to all rights of the obligee. These equitable principles should apply to the situation at bar because the claimant completed the work on behalf of the State and by doing so became subrogated to all the rights of the State as against the contractor. The subrogation arose not by virtue of judgment but by an implicit understanding and agreement with the State. The claimant surety’s rights are equitable rights of subrogation which were created when the performance bond was executed. The equity in favor *189 of the surety company arose at the time of the giving of the bond. In point of time, then, the equitable lien arose prior to the entry of the instant New York State Department of Labor judgments. (Scarsdale Nat. Bank & Trust Co. v United States Fid. & Guar. Co., 264 NY 159, 163-164; cf. Chemical Bank N. Y. Trust Co. v State of New York, 27 AD2d 427, 429, supra.)
There is no dispute that the retainage amounted to moneys which were earned but were unpaid prior to the contractor’s default. Upon the default, the surety became obligated to complete the work and stepped into the shoes of the State, not of the contractor which on default, had forfeited its rights. It became subrogated not only to the right of the State to pay laborers and materialmen from funds retained out of progress reports, but also the State’s right to apply to the cost of completion the earned but unpaid progress payment in its hand at the time of default. (National Shawmut Bank of Boston v New Amsterdam Cas. Co., 411 F2d 843, 848.)
It is clear that the claimant complied with its contractual obligations under the two bonds and abided by its subsequent contract with the State and completed the work. When the surety was called to perform under the bond, the State also had certain obligations and one of those obligations was the payment of the full contract price as agreed to with the original contractor. It appears unfair and inequitable to deny the claimant surety the right to recover the retainage under the contract since the surety is entitled to have the full contract price applied to the performance of the contract.
However, in the case at bar it is unnecessary to disagree with the holding in Safeco (supra). Another ground for granting summary judgment exists.
The State agency and the claimant entered into a contract which was dated December 7, 1973 which obligated the claimant as surety to take over and complete the project as stipulated pursuant to the terms of the performance bond. At the same time the agreement cited that the State agency agreed that the unpaid contract balance as of the date of the contract was $11,241.27 subject to unit quantity adjustment. No other mention was made in the agreement of any possible setoffs nor did the surety claimant have reason to believe that same existed.
Furthermore, by a letter dated November 13, 1974, which apparently makes this case distinguishable from Safeco (su *190 pra) the State agency advised the claimant’s consulting engineer that the contractual work was complete and also advised "[w]e have determined that there are no set-off claims or any charges due against this contractor.” This letter confirmed the agreement dated December 7, 1973, and that the work was satisfactorily concluded, with no set-off claims existing to prevent full payment.
The claimant’s motion for summary judgment is granted. The clerk is directed to enter judgment in the amount of $1,699.59 with appropriate interest.

. The work consisted of the construction of washhouse facilities at the Lewey Lake Campsite, Hamilton County, New York.

. $5,292.50 of this sum was retainage.

. The claimant under its labor and material bond paid various suppliers and creditors of Jo-Gar on Contract No. D-61758.

. In fact, it would appear the claims were perfected to judgments.

. A setoff has been defined as a money demand independent oF and unconnected with the plaintiffs cause of action. (Pekofsky v State of New York, 15 Misc 2d 358, 360.)

. In a footnote (n 8, p 320), the court continued: "If the government can set off the amount of the unpaid taxes when the surety has completed the job, the surety would be forced to work for less than the contract price. An equity court should attempt to avoid such an unfair result.”